### No. 2546

### Second Circuit

---

## W. J. O'PRY INSURANCE AND REAL ESTATE AGENCY, LIMITED, v. LANIER AUTO SPECIALTY COMPANY, INC.

---

(February 8, 1926, Opinion and Decree)
(March 11, 1926, Rehearing Refused)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Fraud—Par. 3.**
Fraud is never presumed.
> Barlow vs. Harrison, 51 La. Ann. 875, 25 South. 378.

2. **Louisiana Digest—Insurance—Par. 33.**
An accident insurance policy accepted and kept by the insured until it has about expired, in the absence of proof of fraud in delivering the policy, binds the insured to pay for the insurance in accordance with the rate stipulated in the policy.

3. **Louisiana Digest—Insurance—Par. 25, 33.**
It is no excuse that the insured placed the policy in its safe without reading same.

Appeal from the City Court, Alexandria Ward, Parish of Rapides, State of Louisiana. Hon. J. B. Nachman, Judge.

This is a suit to collect premiums on insurance policies. Defendant answered and filed plea of estoppel.

There was judgment for plaintiff as prayed for and defendant appealed.

Judgment affirmed.

Hawthorne & Stafford, of Alexandria, attorneys for plaintiff, appellee.

Lamar Polk, of Alexandria, attorney for defendant, appellant.

### STATEMENT OF THE CASE

REYNOLDS, J. W. J. O'Pry, representing the plaintiff, W. J. O'Pry Insurance & Real Estate Agency, Limited, delivered to A. L. Lanier, representing the defendant, Lanier Auto Specialty Company, Inc., a standard accident insurance policy protecting it against loss caused by accident to its employees from May 1, 1922, to May 1, 1924, and also a like policy similarly protecting it from May 1, 1924, to May 1, 1925.

Mr. O'Pry, at the time he delivered the policies, was informed by Mr. Lanier that the payroll of defendant would be around $4000.00 a year, and he figured the premium to be charged on each policy at $70.00, and later rendered bills to defendant for the policies at $70.00 as the minimum premium for each of them. These bills were paid.

The policies of insurance provide:

"C. The premium is based upon the entire remuneration (salaries, wages, commissions, bonuses and all other remuneration) earned by all persons engaged in the business described in the declarations; and, if livery operations are covered hereby, upon the total amount received by the assured from the livery operations as defined in Insuring Agreement 1-C, to be herein referred to as 'livery earnings'. Remunerations of active and/or named executive officers and proprietors and of managers and salesmen shall be included in accordance with the provisions of Item 4 of the Declarations.

"At the end of the policy period the actual amount of the remuneration earned by the employees and the livery earnings received by the assured during such period

shall be exhibited to the company, as provided in Condition D hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium thus computed is greater than the advance premium paid, the assured shall immediately pay the additional amount to the company; if less, the company shall return to the assured the unearned portion, but in any event the company shall retain the minimum premium stated in the Declarations.

"D. The company shall be permitted to inspect the garage, sales agency, service station, repair shop and/or automobiles covered by this policy, and to examine the assured's books and records at all reasonable times during the policy period, or within one year after its final expiration, for the purpose of determining the actual premium earned while the policy was in force, and the assured shall, whenever requested by the company, render a statement of the entire remuneration earned by the assured's employees and of all livery earnings, during any part of the policy period.

"E. This policy may be cancelled at any time at the request of the assured; or by the company by giving five days' notice of such cancellation, and the effective date of such cancellation shall then be the end of the policy period. If such cancellation is at the company's request or at the assured's request, when actually retiring from the business herein described, the earned premium shall be computed and adjusted pro rata as provided in Condition C. If such cancellation is at the assured's request, and he is not retiring from the business herein described, the earned premium shall be computed and adjusted at short rates in accordance with the table printed hereon, but such short-rate premium shall not be less than the minimum premium stated in said declarations. Notice of cancellation mailed to the address of the assured herein given shall be a sufficient notice and check of the company, similarly mailed, a sufficient tender of any unearned premium."

As provided for in the policies, an audit of defendant's books was made and it showed defendant's payroll from May 1, 1923, to May 1, 1924, to be $15,141.49, and its payroll from May 1, 1924, to May 1, 1925, to be $15,202.70.

Shortly after the second audit was made plaintiff rendered defendant a bill for the additional premium claimed to have been earned under the policies. On receiving this bill Mr. Lanier telephoned Mr. O'Pry to cancel the last policy, and Mr. O'Pry went to see him, and they discussed the matter fully. The last policy of insurance was then in defendant's safe but it was not returned or offered to be returned to plaintiff but remained in defendant's safe and in full force until April 21, 1925—ten days before it would have expired by limitation.

The bill rendered by plaintiff to defendant was for the difference between the premium paid and that actually earned under the policies, $216.49, and payment having been refused plaintiff brought this suit.

Defendant denied liability and alleged that plaintiff represented to it that the annual premium on each policy would only be $70.00, and thereby induced it to accept the policies, and that having done so plaintiff is estopped to claim any additional premium.

It further alleged that immediately on being informed by plaintiff that a premium in excess of $70.00 a year was owing on each of the policies, it notified the plaintiff to cancel the second policy which at that time had been in force only one month and ten days, and that at that time only 23% of the premium thereunder had been earned, and that consequently it was entitled to a rebate of 77% of whatever sum the court might find was the premium properly chargeable under the second policy; and it prayed for judgment against the plaintiff in reconvention for 77% of such premium.

On these issues the case went to trial and there was judgment in favor of the plaintiff for the full amount claimed, and defendant appealed.

## OPINION

The question to be decided in this case is whether the plaintiff must pay premiums at the rate stipulated in the policies or at the rate of $70.00 a year for each policy in accordance with his alleged agreement with plaintiff's agent, Mr. Lanier.

Defendant alleges in its answer that at the time of the issuance of the policies plaintiff informed Mr. Lanier, its representative, that the total premium on each policy would only be $70.00, but Mr. Lanier does not so testify.

He says, page 21:

"Q. Now, in the writing of that insurance for your company, and in its acceptance by you, did the question of the amount of the premium enter into it?
"A. It was my understanding that it was to be $70.00 per annum.

* * * *

"Q. What, if anything, was said by the agent of the plaintiff company at the time that this insurance was solicited, with reference to, the amount of premium to be charged?
"A. My understanding was $70.00 premium—and that is the only remembrance that I have of the contract of agreement.
"Q. Was anything said with reference to any additional premium other than the $70.00?
"A. I don't remember anything about it if it was."

This testimony is in no sense equal to a positive oath that he was told by plaintiff or its representative that the premium on the policy would only be $70.00, without regard to the amount of its payroll.

Mr. O'Pry, who delivered the policies to defendant, swears positively that he based the estimated premium of $70.00 on a payroll of $4000.00 given him by Mr. Lanier.

He testified, page 4:

"Q. What was the estimated payroll in that policy?
"A. $4000.00.
"Q. How did you get that?
"A. From Mr. Lanier himself."

The evidence shows that under these conditions defendant enjoyed the protection of insurance under these two policies for two years, less nine days, during all of which time its payroll was in excess of $15,000.00 a year.

Under the law and in equity defendant should pay the premium stipulated in the policies on the basis of its actual payroll.

It is not shown that defendant was induced to accept the policies by any fraud or misrepresentation of the plaintiff, and the fact that it put them in its safe without reading them does not excuse defendant's ignorance of their terms.

In support of its plea of estoppel and contention that an agreement different from that shown by the policies may be proved by parol, defendant cites:

Act 105 of 1898.

46 U. S. 64.
Lepretre vs. Barthet, 25. La. Ann. 125.
14 R. C. L. 1161.
32 C. J. 1065.
14 R. C. L. 1920.
Commercial-Germania Trust & Savings Bank vs. White, 145 La. 54, 81 South. 753.
And numerous other cases.

We find these authorities to be sound and to enunciate perfectly good law, but we cannot see the relevancy they may have to this case, because there is no evidence in the record convicting plaintiff of any fraud or misrepresentation in inducing defendant to accept the policies. No fraud is alleged in defendant's answer and none is

shown by the evidence to have been practiced by plaintiff or its agent on defendant.

Defendant insists that it canceled the last policy one month and ten days after receiving it.

The evidence on this point is the testimony of Lanier, Wilder and O'Pry.

Lanier testified, pages 23 and 25:

"Q. Did you receive any additional invoices of these insurance policies?

"A. Yes, sir, some ten or fifteen days possibly after receiving the second policy and paying the bill I received an additional bill for one hundred and nineteen dollars and some odd cents, and immediately on receipt of it I called Mr. O'Pry on the phone and told him.

"Q. Now, by Mr. O'Pry do you mean the agent who testified here this afternoon?

"A. Yes, sir, W. J. O'Pry, and I told him my understanding of the premium was $70.00 per annum, and asked him what this additional bill was for, and he then explained to me that this was based upon a payroll basis, and that this was an additional premium over and above the $70.00 on the first policy. I then told him over the phone that that was not my understanding, and that if that was the rate that he was going to charge me that I did not want the insurance—and to cancel the policy. We talked quite a while over the phone and later Mr. O'Pry came to my office, and the conversation continued on along that same line, and I told him positively at that time to cancel the policy, that I did not want it on that rate.

\* \* \* \*

"Q. Well, now, where was the policy that you had at that time?

"A. In the safe.

"Q. Did you go to the safe and offer to get the policy and return it to Mr. O'Pry?

"A. No, sir because when Mr. O'Pry left the garage he said: 'We'll see about it'; and I heard no more from it until the policy had expired; I kept it in my safe and I never thought any more about it.

\* \* \* \*

"Q. Now Mr. O'Pry testified that this policy was returned to him on April 21, 1925; would you say that that was about right?

"A. It was about expired before the question ever came up again, and I had forgotten the policy in the meantime."

Wilder testified, pages 26 and 27:

"Q. What was that conversation?

"A. The conversation in regard to the premium on insurance policy, and as I remember the conversation, Mr. Lanier told Mr. O'Pry positively that he did not want the policy and to cancel same.

\* \* \* \*

"Q. And he told Mr. O'Pry to cancel the policy?

"A. Yes, sir, and Mr. O'Pry during this conversation said to let it rest a while and that he would see about it later.

"Q. Did Mr. Lanier withdraw from his statement of cancellation?

"A. No, sir."

Mr. O'Pry testified, pages 10, 11 and 12:

"Q. Now, when the first audit, being exhibit 'B', was received by your office, did you impart that information to the defendant company?

"A. Yes, sir.

"Q. How?

"A. By a bill, billing him for the excess premium.

"Q. That policy was when?

"A. About July 1st.

"Q. What year?

"A. 1924.

"Q. That was on the first premium?

"A. Yes, sir.

"Q. Was any objection raised by the Lanier company with reference to that?

"A. No, sir.

"Q. That audit, then, was received in your office after the issuance of the second policy?

"A. Yes, sir, and after the premium was paid thereon.

\* \* \* \*

"Now following the mailing by you to the Lanier Auto Supply Company of the first amended—or the invoice for the additional premium—you say that no objec-

tion was raised by the Lanier Auto Supply Company to this additional billing?

"A.  Not to the first, but to the second there was an objection.

"Q.  What was the nature of that objection?  How was it made?

"A.  Mr. Lanier said that he understood that the premium was to be $70.00, and I told him that it was based on the percentage of the payroll rate.

"Q.  That was a telephone conversation?

"A.  No, sir, personal.

\*  \*  \*  \*

"Q.  Is it not a fact that he did phone you and tell you to cancel the existing policy?

"A.  I have no recollection of that, but had he done so I could not have canceled the policy without the surrendering of the contract itself.

"Q.  Would you testify that he did not phone you to that effect?

"A.  Yes, sir.

"Q.  Then Mr. Lanier, of the Lanier Auto Supply Company, Inc., did not phone you after the receipt of the amended invoice and tell you to cancel the second policy?

"A.  No, sir, but had he done so I could not have canceled it; the mere fact that he requested cancellation without surrendering the contract would not have been of any value at all, and we would not have accepted that kind of a cancellation on those instructions."

The policy provides that it may be canceled by the insured by giving five days' notice.  It is not contended that the notice of cancellation required to be given by the term of the policy was given or that the policy itself was surrendered or offered to be surrendered.

It therefore follows that the assured received the benefit of the insurance given under the policy and that in law and in equity he should pay for same.

The real question to be decided in the case is the question of fact as to whether or not the plaintiff agreed to furnish defendant insurance covering a payroll of $15,000.00 a year for a premium of $70.00 a year.

The learned judge of the City Court of Alexandria, who tried this case, heard the witnesses and weighed their testimony and gave judgment in favor of the plaintiff. His decision, both under the law and the evidence in the case, is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.