HALL, Judge.
Alleging they are the beneficiaries under Policy No. 7156-0350 issued by Guaranty Income Life Insurance Company on the life of their mother, Katie D. Carey, who died June 30, 1971, plaintiffs brought suit against the insurance company to recover the face amount of the policy ($6,505), together with statutory penalties and attorney’s fees.
The defendant insurance company answered admitting issuance and delivery of the policy to the deceased subject to her approval and acceptance, but further alleging the policy was never accepted by the proposed insured prior to her death. Defendant alleged the policy sued on was one of several options available to the deceased under a policy previously issued by defendant to the deceased which matured March 9, 1971, none of which options were accepted or exercised by her prior to her death. The defendant deposited into the registry of the court the sum of $2,630.43, alleged to be the amount accumulated under the matured policy previously issued to Mrs. Carey and the sole obligation of the defendant to the legal heirs and beneficiaries of the deceased.
After trial the district court in a written opinion held that Policy No. 7156-0350 was issued and delivered to Mrs. Carey without any restrictions or reservations, that she retained the policy until her death at which time it was in full force and effect, and the plaintiff-beneficiaries are entitled to recover the face amount of the policy less an outstanding policy loan and less the first year premium which had not been paid.
From a judgment rendered in accordance with the district court’s opinion, the defendant perfected a suspensive appeal. We affirm the judgment of the district court.
The evidence in the case consists of certain documents and correspondence and a stipulation to the effect that the insurance policy sued on together with two election of option forms, were left with Mrs. Carey by Arnold Braddock, defendant’s agent, on or about May 6, 1971. As so made up, the record reveals the following facts.
Effective March 9, 1956, defendant issued to Mrs. Carey its Policy No. 5603-7010 described as a “Life Policy With Premiums Payable For Fifteen Years — Guaranteed Profit — Sharing Fund Plan”. The policy provided that upon the death of the insured prior to the fifteenth anniversary of the policy, the company would pay the sum of $10,000 to the named beneficiaries, who are the plaintiffs in this suit. In addition to the life insurance provision, the policy provided for additional benefits related to a “Guaranteed Profit-Sharing Fund”. The policy originally provided for an annual premium of $370, but by endorsement effective March 9, 1959, in accordance with the policy provisions and the request of the insured, the premium on the policy was reduced and the deposits into the profit-sharing fund were discontinued. *339 The policy provides for a proportionate reduction in the guaranteed distribution from the fund and in the options for paid-up life or retirement income insurance at maturity of the policy, by reason of the reduced premium.
The policy provides several options upon maturity of the policy at the end of the fifteenth policy year. The first option is the cash value of the policy, plus a guaranteed distribution from the profit-sharing fund. A second option is a paid-up life policy of a certain amount. The third option is a paid-up life policy of a certain amount, together with a cash payment. The fourth option is retirement income at age sixty-five of not less than a certain amount per month.
On March 25, 1971, after maturity of the policy on March 9 of that year, defendant’s secretary, W. P. Welch, addressed a letter to Mrs. Carey regarding the original Policy No. 5603-7010 and another policy not involved in this litigation. This letter advised Mrs. Carey of the maturity of the policy and that no further premiums were payable. It further advised that a representative of the company would call on her in the near future in order to make available his services in effecting settlement of the policy.
On May 6, 1971, defendant’s representative, Arnold Braddock, left with Mrs. Carey the following documents:
(1)Life insurance Policy No. 7156— 0350, described as a 24 payment life nonparticipating paid-up at age 65 policy, insuring the life of Katie D. Carey in the face amount of $6,505, naming plaintiffs as beneficiaries and providing for an annual premium of $181.15. The policy is dated March 9, 1956, being the date of the original policy. The policy is signed by the president and secretary of the company and countersigned by the registrar. Attached to the policy is an application form for the signature of the insured requesting conversion of the original policy to the life paid-up at 65 policy, showing a cash value of the new policy with premiums paid 15 years to the date of conversion as $2,301.81. This form, a carbon copy, is not signed by the insured but is signed by the assistant secretary of defendant and provides that the company “ . . . hereby approves this amendment and places it into effect as of March 9, 1971”. There is also a form with the signature of the company’s president relative to this policy showing the present and future paid-up insurance and cash values and advising Mrs. Carey to “keep it in your policy for convenient reference in watching your guaranteed values grow”.
(2) An election of option form for the signature of the insured by which the insured could elect (a) to receive a fully paid-up nonparticipating whole life policy in the amount of $5,945 with initial cash value of $3,267.05, having a policy loan of $965.24 due March 9, 1971; or (b) surrender the original policy and receive total guaranteed cash of $2,301.81 net after deducting outstanding indebtedness of $965.24.
(3) An election of option form for the signature of the insured by which the insured could elect (a) to receive a fully paid-up nonparticipating whole life insurance policy in the amount of $4,189 with initial cash value of $2,301.81; or (b) surrender the original policy and receive total guaranteed cash of $2,301.81 net after deducting outstanding indebtedness of $965.24.
On May 17, 1971, Mrs. Carey wrote to the president of the defendant company advising that on May 6, Mr. Braddock called by her office to discuss settlement options on the original insurance contract. The *340 letter further advised that he delivered three options with varying amounts of face amount and cash value with the highest being $6,505 and calling for an annual premium. The letter asked for an explanation as to why the face amount of the original contract which is $10,000 should be reduced at the maturity date to a lesser amount.
On May 25, 1971, W. P. Welch, secretary of the defendant company replied advising that various options are available as explained by Mr. Braddock. He explained the reduction in the face amount as being due to the reduced premiums and deposits to the profit-sharing fund and as due to the outstanding policy loan which was deducted from the cash value available to provide paid-up insurance.
On June 10, 1971, Mrs. Carey wrote to Mr. Welch again asking for an explanation of how the company could reduce the face amount of the policy at its maturity when the contract does not mention that and of how the face amounts of the two paid-up options are arrived at.
Mr. Welch replied by letter of June 17, itemizing how the net cash value at maturity was obtained and how the amount of the paid-up whole life insurance policy was calculated.
Mrs. Carey died less than two weeks later on June 30, 1971, from cancer of the colon which had commenced in 1963, according to the death certificate in evidence.
Plaintiff argues primarily that the $6,505 policy was issued and delivered to the insured by the insurance company, it was retained by Mrs. Carey, it was never rejected by her, it was tacitly or impliedly accepted by the insured, and the insured is presumed to have accepted the option most beneficial to her and to the beneficiaries.
Defendant argues primarily that the insurance policy was delivered to Mrs. Carey along with other proposals or options available to her, that the insurance policy was never accepted by her and, therefore, there was no acceptance of the company’s offer and no contract, that the correspondence is evidence there was no meeting of the minds between the company and the proposed insured, and that the insured having never made an election of one of the options, the company’s sole obligation is the accumulated cash value of the original policy.
The record contains no explanation of why the company’s agent left with Mrs. Carey election forms for her signature in connection with two proposed paid-up life insurance policies, but at the same time left with her a fully and completely signed and issued paid-up at age sixty-five policy providing for annual premiums. Although the company’s position is that the policy was left with her as a mere proposal requiring an acceptance, there is no direct evidence to support that position. The company’s agent, Braddock, did not testify. The fact that Mrs. Carey wrote the company inquiring why the face amount of her insurance was reduced does not indicate she did not accept the policy prepared and delivered to her or that she did not believe the policy was fully effective.
The completed policy was issued and delivered to Mrs. Carey. Neither the new policy nor the original policy nor any of the forms left with Mrs. Carey, nor the subsequent correspondence from the company called for her to take any further specific action toward acceptance of the policy. It remained in her hands until her death. It was never rejected by her in any manner. An express, formal, written acceptance of an insurance contract is not essential. Long v. Home Indemnity Co. of New York, 169 So. 154 (La.App.2d Cir. 1936); O’Pry v. Lanier Auto Specialty Co., 3 La.App. 618 (La.App.2d Cir. 1926); LSA-Civil Code Arts. 1816, 1817 and 1818.
Under the particular circumstances involved in this case, we hold the policy was accepted by the insured and was in full force and effect on the date of her *341 death. Accordingly, the plaintiff-beneficiaries are entitled to recover under the policy.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.