(138 So. 113)

JACKSON v. PETRIE & McFARLAND.

No. 31330.

Nov. 3, 1931.

W. C. Pegues, Jr., and Pegues & Pegues, all of Mansfield, for appellant.

Elmo P. Lee and Lee & Williams, all of Mansfield, for appellee.

O'NIELL, C. J.

The writ of review in this case was granted at the instance of the defendant, firm of Petrie & McFarland. The respondents have filed a motion to rescind the order because the petition for the writ was not verified by the oath of either member of the defendant firm, but by the oath of one of the attorneys for the firm. It is contended by the respondents' attorneys that the statute on the subject, section 2 of Act 191 of 1898, p. 437, requires that a petition for a writ of review shall be verified by the affidavit of the petitioner, unless he be absent from the parish in which the judgment sought to be reviewed was rendered, in which event the petition may be verified by the affidavit of the attorney, provided he swears to the absence of his client. All that the statute requires, in that respect, is "the petition shall be sworn to." The rule of court first adopted with reference to Act 191 of 1898, being an addition to rule XII, adopted June 30, 1898;

required merely that a petition for a writ of review should be accompanied by an affidavit that the notification required by the rule had been filed in the office of the clerk of the court of appeal. See addition to rule 12, 50 La. Ann. xxxv. When the Rules of Court were revised, March 15, 1915, section 2 of rule 16 required that a petition for a writ of review should be verified by the affidavit of the petitioner, or, in case of his absence from the parish in which the judgment complained of was rendered, then by the affidavit of his attorney, provided such affidavit showed the absence of the petitioner from the parish. It was under that rule that it was held, in the cases cited by counsel for the plaintiff in this case, that the affidavit of the attorney for a petitioner for a writ of review would not suffice unless the attorney swore that the petitioner was absent from the parish in which the judgment complained of was rendered, viz.: Landry & Son v. Labarre, 125 La. 714, 51 So. 697; North British & Mercantile Insurance Co. v. Sims, 132 La. 411, 61 So. 509; Landry v. Poirrier, 135 La. 731, 66 So. 163; Stubbs v. Fleming, 135 La. 796, 66 So. 225; Haas v. Opelousas-St. Landry Bank & Trust Co., 167 La. 537, 119 So. 700. In the latest revision of the Rules of Court, January 2, 1931, it was observed that the rule pertaining to the verification of a petition for a writ of review was more rigorous than the statute required it to be, and that, inasmuch as such petitions are based upon the record and upon propositions of law, there would be no necessity for the petition to be sworn to, if the statute did not require it, except perhaps to show that notice was given to the opposing party or parties. Hence section 5 of rule 13, 171 La. xiii, now requires merely: "A petition for a writ of review, under the provisions of section 2 of Act 191 of 1898, p. 437, shall be verified by the affidavit of the petitioner or his attorney." It is not necessary now that the petitioner should be absent, in order that his attorney shall have authority to verify a petition for a writ of review. It is contended by counsel for the respondents in this case that the new rule on the subject is not consistent with the statute; but our opinion is that the new rule is more consistent with the statute than the original rule was. The statute, by requiring merely that a petition for a writ of review "shall be sworn to," leaves it largely within the discretion of the court as to how the petition shall be verified, or "sworn to."

The motion to rescind the order for the writ of review is therefore overruled.

### On the Merits.

The suit is to recover a loss of $800 on two insurance policies, for $400 each, on certain automobile parts and accessories, tools and implements, which were destroyed by fire. The defendants are the insurance agents who wrote the policies, and are sued as agents for undisclosed principals, because the plaintiff did not have possession of the policies, and the defendants refused to give him the names of the companies for whom the policies were written. The plaintiff claimed, in the alternative, that, if the court should hold that the policies were not in force at the time of the fire, the defendants were liable in damages for the amount of the policies, for having canceled them without giving notice to him, the insured. The defendants, answering the suit, claimed that the policies were never in fact issued, or in force, because the premiums were payable on delivery of the policies, and the plaintiff failed to pay the premiums when the policies were tendered to him. The district court rejected the plaintiff's demand. He appealed to the Court of appeal, but died before the case was heard on appeal, and his widow and heirs were made parties plaintiff and appellant. The

court of appeal reversed the decree, and gave judgment in favor of the plaintiff's widow and heirs for the amount of the policies, with interest and costs.

■ The policies were written and signed on the 24th of February; and, three or four days afterwards, a clerk employed in the defendants' insurance office, called at Jackson's place of business and, tendering him the policies, requested payment of the premiums, which amounted to only $28.08. Jackson said that he did not have the money, requested the clerk to return the policies to the office of the agents, and said that he would call in a few days and pay the premiums and get the policies. He testified that he told the clerk also that he, Jackson, had no place to keep the policies, at his garage, and requested the clerk to keep them for him, saying that he would call in a few days and pay the premiums and get the policies and put them into his bank box. He testified that the clerk first handed him the policies, and that he handed them back to the clerk; and in that respect he is corroborated by the testimony of a bystander. The clerk testified that he had no recollection of handing the policies to Jackson, or of parting with possession of them. Assuming, for the sake of argument, that the clerk for the insurance agents did hand the policies to Jackson, when the clerk asked for payment of the premiums, and that Jackson immediately handed the policies back to the clerk, saying that he, Jackson, was not then prepared to pay the premiums but that he would call in a few days and pay the premiums and get the policies, such a passing of the policies to and from the hands of Jackson, accompanied by such a conversation, did not constitute a delivery of the policies to Jackson. He did not call at the office of the agents, or offer to pay the premiums on the policies, or ask for possession of the policies,

until the property was destroyed by fire. The fire occurred on the 9th of May, forty-five days after the policies were written. On the next day after the fire, Jackson called upon the agents, asked for the policies, and offered to pay the premiums, or to have the amount deducted from the amount of the loss. The agents then informed Jackson that they had marked the policies "canceled" and sent them to the insurance companies, on the 6th of May, three days before the fire occurred. The agents also expressed their opinion that the policies were never in force, but said that they would inform the companies of the facts and of the demand of Jackson for payment of the loss. The companies, of course, denied liability.

The judgment of the court of appeal is based upon the court's opinion that the writing of the policies, and the retention of them by the insurance agents for three or four days, constituted an extension of credit to the insured, from the time that the policies were written until they were tendered to the insured with the demand for payment of the premiums, and that, as the policies were in force during those three or four days, the insured was entitled to notice of cancellation of the policies. The evidence in the case leaves no doubt, however, that the parties intended that the contract of insurance should be a cash transaction; that the policies should not be delivered without payment of the premiums. Jackson's testimony leaves no doubt about that, because he and another witness for him testified that, about a week before the fire occurred, he, Jackson, met the clerk who had tendered the policies to him about a month before, and asked the clerk if he, Jackson, might pay the amount of the premiums in installments; and both witnesses testified that the clerk agreed to the proposition. The witness who corroborated the

testimony of the insured in that respect testified that the proposition was to pay the amount in monthly, or perhaps quarterly, installments. The clerk admitted, in his testimony, that some such proposition was made to him, but denied that he accepted it. He testified that he told Jackson that he, the clerk, had no authority from the firm to extend credit, but that he, Jackson, might see one of the members of the firm about the matter. In fact, the clerk had no authority to extend credit to patrons of the firm; and, considering that the amount of the premiums was only $28.08, we do not believe that the clerk ever consented to its being paid in monthly or quarterly installments. It is conceded that Jackson did not, at any time before the fire, actually offer to pay any part of the premiums.

Our opinion is that the mere writing and signing of the policies, in compliance with the application for the insurance. did not constitute a contract of insurance. The policies had to be written and signed before they could be delivered; and the understanding was that they were not to be delivered without payment of the premiums. There was no agreement nor intention to extend credit to the applicant for insurance, and hence no agreement nor intention to make a contract of insurance without payment of the premium.

The court of appeal cited three decisions in support of its judgment, viz.: Pino v. Merchants' Mutual Insurance Co., 19 La. Ann. 214; 92 Am. Dec. 529; La Societe de Bienfaisance des Arts et Mertiers v. William B. Morris & Co., Agents of Home Mutual Insurance Co., 24 La. Ann. 347, and Latoix v. Germania Insurance Co., 27 La. Ann. 113. In each of those cases the court concluded, from the evidence, that there was an understanding between the parties that the insurance company or agent extended credit to the insured for the amount of the premium, and that the contract of insurance therefore did not depend upon the payment of the premium. The judgment of the court of appeal, in the present case, was not based upon any such conclusion of fact, but was based upon the proposition of law that the mere writing and signing of the policies constituted an extension of credit to the applicant for insurance until the policies were tendered to him, and that, as the policies were therefore once in force, they could not be canceled by the insurance company or its agent without notice to the insured. Our opinion, on the contrary, is that there was no extension of credit to the applicant for insurance; hence no contract of insurance, and hence no necessity for notice of cancellation. The meaning of the word "canceled," which the agents stamped on the policies when they sent them to the companies, was explained in their testimony; the purpose was merely to inform the companies that the policies were not in force, and that the agents were not obliged to account to the companies for the premiums.

The judgment of the court of appeal is annulled, and the judgment of the district court is reinstated and made the judgment of this court.