## LONG v. HOME INDEMNITY CO. OF NEW YORK et al.

### TURNER et ux. v. SAME.

### Nos. 5290, 5291.

Court of Appeal of Louisiana. Second Circuit.

June 26, 1936.

Lemle, Moreno & Lemle, of New Orleans, and Hardin & Coleman, of Shreveport, for appellant.

Lewell C. Butler, of Shreveport, for appellees.

TALIAFERRO, Judge.

The Chevrolet sedan of Judge Philip B. Long, of Carthage, Tex., was run into by the Ford coupé of defendant William R. O'Pry near the noon hour on November 15, 1934, on the Greenwood road, 10 miles west of the city of Shreveport, La. Mrs. Long, riding on the rear seat with her friend, Mrs. S. G. Turner, was fatally hurt. She died while unconscious within a brief time after the collision. Mrs. Turner was severely and painfully injured, but recovered. O'Pry was operating his own car; and that of Judge Long by a negro chauffeur.

Alleging that the accident was due entirely to the negligence of O'Pry, Judge Long instituted suit against him and his alleged insurer, the Home Indemnity Company of New York, to recover damages to him directly resulting from said negligence, to wit, for injury to his car and for the loss of the companionship, love, and affection of his wife, and grief caused him by her tragic and untimely death.

Mrs. Turner and her husband also bring suit against said defendants. He sues to recover the amount of hospital, physicians', nurses', and other bills necessarily incurred in treating his wife's wounds. She sues for pain and suffering experienced by her because of injuries received in the accident, for inconvenience, and for the impairment of the use of one limb.

To the demands of Mr. and Mrs. Turner, O'Pry's answer is a general denial, save that he admits the accident, operating and ownership of the Ford coupé involved therein, and that he carried a policy of public liability insurance with his codefendant. His answer to the suit of Judge Long is virtually the same, with the additional defense that the accident was caused solely by the negligence of his (Long's) chauffeur.

The Home. Indemnity Company denies liability in both suits, and in each specifically pleads that the contract of insurance sued on by plaintiff was never in force between it and O'Pry because never accepted by him and J. J. Dodd, also a beneficiary thereunder, and because the premium due thereon was never paid by them; that if it ever was in force and effect, its existence was terminated by the cancellation thereof by respondent, pursuant to its own terms, by written notice so advising, sent to O'Pry and Dodd, on October 16th, prior to the accident. To the Long suit, this defendant also urges the negligence of his chauffeur in bar of recovery.

The two suits were consolidated for trial in the lower court and have that status here. All plaintiffs recovered judgment against both defendants. The insurer alone appeals.

Since the appeals were lodged here, Judge Long has died. His only child, Miss Elizabeth Long, has been substituted as plaintiff in his case. Mrs. Turner, in answer to appeal, prays that the award in her favor be increased from $2,500 to $4,000.

The defense of these suits was sustained almost exclusively by the Home Indemnity Company. O'Pry did answer them, but was not present in person or by attorney at the trial and took no part whatsoever therein. This attitude toward the case is maintained here. At the time of trial, he was under indictment in the district court of Caddo parish for manslaughter of Mrs. Long. That the accident and its frightful results are alone chargeable to his gross negligence is beyond question. The evidence clearly sustains this conclusion. In aggravation of his offense, it may truthfully be said that he was too highly stimulated by intoxicants when the fateful tragedy happened. Appellant virtually concedes that responsibility for the collision is no longer a debatable issue in the case. It does seriously and forcefully, through able and learned counsel, combat the issue of liability vel non under the insurance policy relied on by plaintiffs. We shall address ourselves solely to this question. The facts, in chronological order, are these:

The Ford coupé involved in the collision was purchased on time by O'Pry from a dealer in the city of Shreveport. Notes were given for the credit portion of the price. These were indorsed by one J. J. Dodd for accommodation. Insurance against loss from fire or theft of the car was effected with the Home Insurance Company and a policy therefor issued in the name of O'Pry and Dodd. O'Pry desired public liability and property damage protection also and requested the insurer to so indorse the policy, which was returned with his letter. On August 9, 1934, the Hibernia Insurance Agency, Inc., general agents, to whom said request was made, addressed a letter to O'Pry and Dodd, acknowledging receipt of the request of O'Pry, but advised that it was not in order to comply therewith; and in lieu thereof, for their account, issued and inclosed therewith policy No. A. P. 8-89895 of the Home Indemnity Company. This is the policy sued on. In the letter of these general agents, it is said:

"We also enclose statement covering premiums in this connection of $24.00 for your attention, and return to you policy (AO) No. 54539-2, together with coupon book of the Universal Credit Company."

The new policy was duly received by O'Pry. He did not acknowledge receipt of it, but remained silent in regard thereto until after the accident. On September 13, 1934, these general agents wrote and mailed a letter to O'Pry and Dodd as follows:

"Re Policy AP 8-89895 - The Home Indemnity Company.

"Under date of August 8th in response to your request we forwarded to you the above mentioned policy, together with statement covering premium of $24.00.

"Will you please let us know whether or not the policy as written is acceptable to you and also as to when we may receive remittance from you to cover the premium. * * *"

This letter was addressed to Waskom, Tex., and was not returned. Presumably, it was received by O'Pry as he was then living very close to Waskom. It was not answered, and on October 5th, thereafter, the following letter was mailed by the

general agents to O'Pry and Dodd, at Waskom:

"Re Policy AP 8-89895 - The Home Indemnity Company.

"We regret to note that we are without reply from you to our letter of September 13th regarding premium of $24.00, due under the above mentioned policy, and are obliged to ask that you kindly favor us with remittance at this time to cover, or, if you cannot see your way clear to do so, that you kindly return the policy to us by first mail for cancellation.

"It is important that this matter receive your serious and immediate attention."

O'Pry, in his testimony taken under commission, denies receiving these letters. They were not returned to the writer. The premium charge for the new policy was not paid. The policy contains the following clause governing the right of either party to effect its cancellation:

"This policy may be cancelled at any time either by the named assured or by the company upon written notice to the other party stating when cancellation shall be effective and the date of cancellation shall then be the end of the policy period. If cancelled by the named assured the company shall receive or retain the short rate premium calculated in accordance with the short rate table printed thereon. If cancelled by the company, the company shall be entitled to the earned premium pro rata. Notice of cancellation in writing, mailed to or delivered at the address of the named assured, as herein given, shall be a sufficient notice, and the check of the company or of its duly authorized agent, similarly mailed or delivered, a sufficient tender of any unearned premium."

Receiving no advice from O'Pry and the premium remaining unpaid, the Home Indemnity Company, on October 16, 1934, addressed the following letter to him and J. J. Dodd, at Greenwood, La.:

"On account of the non-payment of premium of $24.00, we hereby cancel our policy AP 8-89895 issued to you on August 8, 1934.

"You will, therefore, please take notice that at the expiration of five days from the receipt of this notice, the said policy will terminate and cease to be in force."

This letter and the envelope containing it were addressed to Greenwood because that place is designated as the "address of assured" in the policy contract. It was sent by registered mail; was unclaimed; and was returned to the sender by the postal authorities on October 22d. Apparently, no further attention was given the matter until after the accident.

Appellant's brief correctly narrows the contested issues of the case to these:

1. Was the policy of insurance in effect on October 16, 1934, and, if so,

2. Did the registered, but undelivered notice of that date terminate its existence?

It is contended by appellant that the policy contract sued on never became effective as such because not accepted by the insured. In support of this position, it is argued that O'Pry requested public liability and property damage with the Home Insurance Company and was, in the nature of an offer, sent a policy giving him protection in these respects with the defendant, the Home Indemnity Company; that therefore, he not having accepted this offer of a policy in a company not named by him, is deemed to have rejected it. Retention of the policy by O'Pry for over two months is a rather weighty circumstance indicating its acceptance by him. Ordinarily, the assured has no preference as to the company offering him protection. Protection is what he desires. This is of first importance; the one doing the protecting is of second importance. Appellant must have concluded that the policy was in force as payment of the premium was requested in its letter to the assured of September 13, 1934, and in the letter of October 5th, it is specifically requested that the premium be paid at once or that the policy be returned by first mail for "cancellation." Before a contract may be canceled, it must perforce have had legal vitality. Touching this question, 32 Corpus Juris, p. 1128, has this to say:

"While the mere receipt of the policy by a person proposed to be insured, for the purpose of determining whether he will accept it, does not conclude the contract, yet, where the applicant desires to repudiate the contract, he should return the policy; his reception and retention of it without objection beyond a reasonable time is deemed to be an acceptance of it by him, even where the policy does not conform to the terms of the application."

Many cases from other jurisdictions so holding are referred to by the author.

█ Generally speaking, formal acceptance of a policy is not necessary to its ef-

fectiveness as between the insured and insurer, but may be implied from acts and conduct. Todd v. German-American Insurance Co., 2 Ga.App. 789, 59 S.E. 94.

Retention of a policy for three months has been held to be unreasonable and acceptance implied. Carrigan v. Nichols, 148 Ark. 336, 230 S.W. 9; Faith v. Home Life Insurance Co., 203 Mo.App. 196, 208 S.W. 124.

And in Remmel v. Griffin, 81 Ark. 269, 99 S.W. 70, retention of the policy without objection for one month was held to amount to an acceptance.

■ There are decisions to some extent at variance with the principle announced in the foregoing, but we think the case at bar falls within the doctrine laid down in the cited cases. The policy contract to be effective must be binding on both sides. If it has been impliedly accepted as written by the insured and the insurer, believing it is in force, demands payment of the premium or return of the contract for "cancellation," these acts, in our opinion, clearly reflect a "meeting of minds" on the point. The fact that the premium was not paid does not materially affect the situation. The insurer, of course, has the right to demand its payment before delivery of the policy, but this right, being for the benefit of the insurer, may be waived by it. Pino v. Merchants' Mutual Insurance Co., 19 La.Ann. 214, 92 Am.Dec. 529; La Societe, etc., v. Morris & Company, 24 La.Ann. 347.

In Latoix v. Germania Insurance Company, 27 La.Ann. 113, it was held:

"Where a policy of insurance is issued without prepayment of the premium, the inference is that the insurers intended to extend a credit for its payment. We do not think that it was at the option of the company to cancel the policy. They had the right to claim a dissolution of the contract for non-payment of the premium upon putting the other party in mora."

These cases are commented on in Jackson v. Petrie & McFarland, 173 La. 593, 138 So. 113.

It is our opinion that the policy sued on had become fully effective and was invested with legal vitality when defendant undertook its cancellation.

■ Twenty-three days after the accident, a representative of the insurer took from O'Pry, at Waskom, Tex., a written statement in regard to the issuance, delivery, and acceptance of the policy sued on. In this statement O'Pry is made to say that because J. J. Dodd's name was given as an assured, he declined to accept the policy and pay the premium. Appellant relies strongly on this statement in support of its contention that there was no "meeting of minds" and, therefore, the policy never became effective. O'Pry testified that he returned the policy to the agents with the request that Dodd's name be eliminated as an assured. He is unquestionably in error in so saying. He also testified that he retained the policy in his possession, believing himself fully protected thereby. He was not interrogated touching the circumstances under which he signed the statement above mentioned. He was then doubtless still affected by the tragedy his own negligence had caused. Such statements, this court has had occasion to say, should not prevail over sworn testimony of the one making them, nor over other evidence and proven facts of the case, rendering its correctness improbable or untrue. See Prudhomme v. Continental Casualty Company, 169 So. 147, this day decided by us.

■ The effect of defendant's effort to cancel the policy presents a more difficult question for determination. So far as our own research reveals, and we have not spared time or energy in making it, the question is of first impression in this state. Hence, jurisprudence of other jurisdictions on the subject should, at least, be persuasive. Notice of cancellation given by the insurer, according to the policy, shall be effective, when "mailed to or delivered at the address of the assured as herein given." The fact of mailing the notice to said address, seemingly, was intended to effect the policy's abrogation. However, the notice mailed to O'Pry and Dodd on October 16, 1934, adds to the policy stipulation by incorporating therein the following:

"You will, therefore, please take notice that at the expiration of five (5) days from receipt of this notice, the said policy will terminate and cease to be in force."

Out of an abundance of caution, this letter was sent by registered mail. The sender desired to have a record if and when received by the addressee, as from such receipt the period for the policy's termination, as fixed by the insurer, would begin to run. Since it was not received, the question arises, Did this letter and notice produce the desired effect, or was it

abortive? We have reached the conclusion that it was ineffective.

In Werner et al. v. Commonwealth Casualty Company, 109 N.J.Law, 119, 160 A. 547, the Court of Errors of the state of New Jersey, considering the cancellation clause of a policy identical in words with that before us, held:

"Policy provided for cancellation by either party, and, in case of cancellation by company, that notice of cancellation in writing mailed to or delivered at address of assured as given therein should be sufficient, requiring mailing of notice in such form as would be reasonably expected to effectively reach place designated and thereby come to notice of assured, rather than by directing it to an individual living at certain address in manner requiring a personal receipt, and thereby preventing delivery, unless that person were available and receipt personally given."

The court, in passing on the question, said:

"It seems to us that the notice of cancellation must be 'mailed to' (using the words of the policy), if mailed at all, in such form of mailing as would be reasonably expected to effectively reach the place designated by the policy and thereby come to the notice of the assured. The purpose of the particular provision specifying how notice should be given is of course to protect the company against changes of residence of the assured which it could not be expected to follow, while at the same time affording reasonable protection to the assured through the mail forwarding custom of the postal authorities. If mailed in the ordinary unregistered letter, the notice would be delivered at the address named or forwarded and thus reach the assured. If directed, however, to an individual living at such address in a manner requiring a personal receipt, it is obvious it could not be delivered unless that person were available and the receipt personally given. It seems to us that mailing a letter to an address by a method that might (and assumably did in this case) prevent its reaching the person addressed is not a fair compliance with the requirement of the policy. The company's own action in placing the limitation might well preclude actual receipt of the notice which normally would follow an unconditional delivery at the place designated. In attempting to procure the personal receipt of the assured for its own evidential purposes, it overreached itself and defeated the very object of the provision of the policy—reasonably certain notice to the assured and relief of the company from following his changes of residence."

Then the Supreme Court of New York in Kamille v. Home Fire & Marine Insurance Company of California, reported in 129 Misc. 536, 221 N.Y.S. 38, passed upon this same question and held that undelivered notice of cancellation sent by registered mail did not meet the requirements of the policy. The syllabus of the case, correctly reflecting the court's holding, reads:

"Notice of cancellation of automobile theft insurance policy, sent by registered mail in envelope on which was printed 'Personal receipt of addressee required,' not actually received by insured, held ineffective to cancel policy because not mailed in manner authorized by cancellation clause of policy authorizing cancellation by giving insured five days' written notice, mailed to insured's address stated in policy."

The reasoning of these two cases appears to us to be sound. Had the notice been sent to the assured by ordinary mail, the chances of it being received would have been much more likely than if sent by registered mail, requiring for delivery a personal call from the addressee, whereas, ordinary mail may be otherwise delivered. By attempting to insure delivery of the notice through the more certain means of registry, defendant thereby incurred a greater danger of nondelivery and of indefinitely deferring the commencement of the delay period by it fixed for the policy's termination. Such a notice does not meet the provisions of the policy nor fall within what we deem was the contemplation of the parties thereto.

We think the effort to cancel the policy ineffective for a more cogent reason, one not urged by plaintiff. While the address of the assured who, in reality, was O'Pry alone, as Dodd had no interest whatever in the car, is given in the policy as Greenwood, La., yet, it appears that O'Pry did not receive his mail from that office. When he returned the fire and theft policy to the general agents in New Orleans, he evidently wrote from Waskom, Tex., as their answer, returning that policy and inclosing the one sued on, was so address-

ed. All other letters to the assured were addressed to Waskom, and none was returned unclaimed. Now, it seems to us that from this correspondence defendant should have been impressed with the fact that the assured was receiving his mail at Waskom and not Greenwood. The files of its general agents contained irrefutable evidence of this fact. This was equivalent to notice from the assured that if he ever had received mail at the Greenwood post office, he had changed to Waskom, near which he lived; and, in view of all this, when the registered notice was returned from the Greenwood office unclaimed, the duty certainly devolved upon defendant, if it wished to persist in its desire to cancel the policy, to continue the effort to deliver said notice to the assured at his correct address. Over three weeks had elapsed when the accident occurred. This was ample time to follow the matter up to see that notice of cancellation was delivered. In 32 Corpus Juris, 1249, anent this question, it is said:

"But it has been held that a notice mailed to the assured at his latest address appearing on the company's record is sufficient, insured assuming the risk of due receipt of the notice."

We do not think the notice to cancel was mailed to the proper address of the assured. Placing the address of the assured in the policy was for the benefit and convenience of the insurer, as it could not be expected to keep watch over his movements and shifts from place to place; but, in this case, where the insurer has definite knowledge that the assured's address has been changed, it is required to govern itself thereby.

On account of the limitations of the policy, there was judgment in favor of Judge Long and against defendants, in solido, for $5,465.30, of which $465.30 was for damages to the automobile; and against O'Pry, individually, for $4,534.70. There was also judgment in favor of Mr. Turner for $836.42, and in favor of Mrs. Turner, against both defendants, in solido, for $2,500. Appellant does not complain of the amount of these awards. Appellee has asked for an increase only for Mrs. Turner. She was seriously injured, sustaining an incomplete fracture of the tenth rib, small scalp wound, compound fracture of the right tibia and fibula in the middle thirds. She was greatly shock-

ed from the impact and her wounds bled profusely. She suffered intense pain. An operation was necessary to set the broken bones. She was able to leave the sanitarium on November 29th, but returned to Shreveport several times thereafter from her home in Texas for surgical attention. The plaster cast was finally removed on January 22d, but it was found that the union of broken bones was insufficient to allow her to walk without support. A walking cast was applied. This was removed February 18, 1935, and the patient discharged. On March 29, 1935, she was still using crutches and experiencing pain. Her age militated against an earlier recovery. We think the judgment in her favor inadequate to the extent of $1,000. All other awards are well supported by the testimony.

For the reasons herein assigned, the judgment in favor of Mrs. Ruth Turner, herein appealed from, is amended by increasing it to $3,500 and the other judgments appealed from are affirmed, with costs.