*233
 
 ROGERS, Justice.
 

 This suit was brought by Egbert E. Davies and Sue Schroeter Davies, father and mother of Billie Sue Davies, to recover damages and expenses resulting from injuries received by the child when she was run over by an automobile driven by Welby Stahl and owned by P. J. Mabry. The sole defendant is the Consolidated Underwriters, the insurer of the car, neither the owner nor the driver being a party to the suit.
 

 Holding that the terms of the insurance contract excluded coverage in the case, the trial judge rejected plaintiffs’ demands. The Court of Appeal affirmed the judgment, adopting the opinion of the trial judge. A rehearing was granted, and upon the rehearing the Court of Appeal reinstated its former decree. On plaintiffs’ application, a writ of certiorari issued and the case is now before this Court for review of the opinions and decree of the Court of Appeal.
 

 When the case was called for argument, the defendant filed a motion asking for the recall of the order for certiorari, on the ground that the petition for the writ is not verified in accordance with Section 2 of Act No. 191 of 1898 and Section 5 of Rule 13 of this Court. Defendant avers specifically that the affiant does not swear nor state that the allegations of the petition for certiorari are true and correct as was his mandatory duty.
 

 In response to the motion to recall, plaintiffs’ counsel, in the absence of the plaintiffs, made and filed an affidavit setting forth “that the allegations in the petition for writ of review are true and correct to the best of affiant’s information and belief,” and counsel has asked that the petition be amended accordingly nunc pro tunc.
 

 Section 2 of Act No. 191 of 1898 provides that a petition for a writ of review shall be sworn to by the petitioner. Section 5 of Rule 13 of this Court provides that: “A petition for a writ of review, under the provisions of Section 2 of Act 191 of 1898, p. 437, shall be verified by the affidavit of the petitioner. or his attorney,” and be accompanied by the documents enumerated in the rule. The defendant cites those sections of the statute and rule in support of its motion to recall the order for certiorari. The defendant also cites in support of its motion the case of Horvath v. Eppling, 164 La. 93, 113 So. 778, wherein it was held that the requirement of Section 2 of Act No. 191 of 1898, that a petition for certiorari be sworn to, is mandatory and must be complied with under penalty of dismissal.
 

 In the Horvath case and in the three cases cited in support of its holding, the petition for certiorari apparently was not' sworn to at all. That is not the case here. Attached to relators’ petition for. certiorari is the affidavit of one of their attorneys reading as follows: “That he (the attorney) is of counsel for Egbert E. Davies, et al., petitioners in the foregoing application for a writ of certiorari ; that petitioners, through their attorneys, gave due notice of their intention to apply to this Court for a writ of certio
 
 *234
 
 rari, the same being addressed to the Honorable Court of Appeal for the Second Circuit, and to the defendant and its counsel; and that a rehearing was applied for by’ the petitioners, according to law.” Also attached to relators’ petition are copies of the original petition and answer filed in the district court, opinions of the district court and of the Court of Appeal on the original hearing, plaintiffs’ and defendant’s briefs to the Court of Appeal on the original hearing, petition for a rehearing, opinion of the Court of Appeal on rehearing, and notice of plaintiffs’ intention to. apply for a- writ of certiorari.
 

 In Jackson v. Petrie & McFarland, 173 La. 593, 138 So. 113, it is pointed out that inasmuch as the petition for a writ of review to the Court of Appeal is based upon the record and upon propositions of law, there would be
 
 no
 
 necessity for the petition being sworn to, if the statute did not require it, except perhaps to show that notice was given to the opposing party or parties. It is also pointed out in that case, at page 596 of the opinion in 173 La., at page 114 of 138 So., that “the statute, by requiring merely that a petition for a writ of review ‘shall be sworn to,’ leaves it largely within the discretion of the court as to how the petition shall be verified, or ‘sworn to.’ ” The same observations are applicable to Section 5 of Rule 13 of this Court requiring that the petition for a writ of review shall be verified by the petitioner or his attorney.
 

 In Jackson v. Petre & McFarland, which was decided subsequent to the decision in the Horvath case, it was held that the attorney’s verification of a petition for a writ of review is sufficient, although the absence of the petitioner is not shown. The ruling was affirmed in the case of Pipes v. Gallman, 174 La. 257, 140 So. 40.
 

 In several cases which, like Jackson v. Petre & McFarland, were decided subsequent to the Horvath case, the rule was laid down that while the failure to literally observe the requirements of Section 5 of Rule 13 of this Court might justify the "Court in refusing to issue the writ, it would not justify the Court in dismissing the proceeding after it had issued the writ and had before it the record and the briefs filed in the Court of Appeal. Pipes v. Gallman, 174 La. 265, 266, 140 So. 43; Hatten v. Haynes et al., 175 La. 743, 144 So. 483; Laurent v. Unity Industrial Life Insurance Co., 189 La. 426, 179 So. 586.
 

 Section 5 of Rule 13 of this Court provides that in addition to its verification, a petition for writ of review shall be accompanied' by copies of all pleadings filed in the court of original jurisdiction, copies of all briefs filed in the Court of Appeal and copies of the opinion rendered by the Court of Appeal and of the Court’s reasons, if any, for refusing a rehearing. Notwithstanding those requirements, it was held in Pipes v. Gallman that a writ of 'review should not be dismissed because the petition therefor was not accompanied by the briefs filed in the Court of Appeal. In Hatten v. Haynes, it was held that relator’s failure to annex a copy of defendant’s exception, or to attach the reasons of the Court of Appeal for refusing a .rehearing
 
 *235
 
 did not warrant the dismissal of the writ of review. In Laurent v. Unity Life Insurance Company, where the petition for a writ of review was not accompanied by either a copy of the judgment of the court of original jurisdiction or by copies of the opinions and decrees rendered by the Court of Appeal on the original hearing and on rehearing, the Court refused to dismiss the petition on relator’s motion, because the writ had been granted and the record upon which the Court of Appeal acted was before the Court.
 

 Under Section 10 of Act No. 45 of the Extra Session of 1870, this Court is empowered to establish and enforce such rules not inconsistent with law as may be necessary to secure the regular and expeditious disposition of its business. Section 5 of Rule 13 is not inconsistent with Section 2 of Act No. 191 of 1898. The purpose of the rule is to establish the practice and procedure to be followed in this Court in accordance with the provisions of the statute, and the rule applies to all cases and all litigants and their counsel as much as the statute itself. According to the language of Section 5 of Rule 13, it is as imperative to annex to the petition for a writ of review the enumerated pleadings, briefs, and opinions of the courts as it is to verify the petition as required both by Section 2 of Act No. 191 of 1898 and Section 5 of Rule 13. If the failure of the petitioner for a writ of review to comply with the law requiring certain documents to be annexed to the petition will not justify the dismissal of the writ after it has been issued, by a parity of reasoning, the failure of the petitioner to verify the petition for the writ will likewise not justify the dismissal of the writ when issued. This is particularly so where no issue can arise before this Court based on the failure of the petitioner for the writ to fulfill the requirement.
 

 The affidavit which is attached to relators’ petition for certiorari shows that the notice required by the statute and the rule was given to respondent. The petition contains an assignment of errors and is accompanied by all the documents prescribed by the rule. No question is made as to the correctness of those documents and the case has been argued and submitted to this Court upon the record of the proceedings in the district court and the Court of Appeal and upon the propositions of law at issue between the parties. In these circumstances, we fail to see how the respondent has been prejudiced by the failure of the relators to swear to matters as to which there is and can be no dispute. The motion to rescind the order for the writ of review is therefore overruled.
 

 On the merits, the record discloses that Welby Stahl, the driver of the automobile that ran over and injured plaintiffs’ minor daughter, is a nephew of P. J. Mabry, the owner of the car. Stahl is not an employee of Mabry but a close personal relationship exists between him and Mabry. He lives next door to the place of business of Mabry.. Stahl enjoyed the privilege of using for his private purposes any automobile owned by Mabry. At the time of the accident, he was driving Mabry’s car with
 
 *236
 
 the consent of Mabry, as found by both the district court and Court of Appeal.
 

 Plaintiffs maintain that the policy of insurance contains a provision covering any person driving the automobile with the consent of the insurer, while defendant maintains that the policy does not contain any such provision.
 

 The provision in the insurance contract on which plaintiffs predicate their action reads as follows:
 

 “Any person using the automobile described herein with the permission of the named Subscriber or any person, firm or corporation in whose service the automobile is being used by the Subscriber may, if the Subscriber shall in writing so direct within thirty days after the presentation of a claim, be entitled to indemnity in the same manner and under the same conditions as the Subscriber, but the Underwriters’ liability shall not thereby be increased.”
 

 Defendant contends that the quoted provision of the policy does not cover Stahl for the reason that Mabry, the insured, did not direct in writing that the coverage provided by the policy should extend to Stahl. J3y supplemental petition plaintiffs alleged as follows:
 

 “That the named assured, P. J. Mabry, to protect his own interest and that of his nephew, Welby Stahl, a few minutes after the accident, verbally notified the local representative of defendant of the accident and the details of the same, including the connection of Welby Stahl, arid that on the same day, he notified the defendant in writing of the accident and the connection of the said Welby Stahl therewith which was acknowledged on the next day by the defendant and that within a few days thereafter, and within thirty days after the said accident, the company’s representative came to Shreveport and made a complete investigation of the matter and told the said P. J. Mabry that the defendant company would assume all such liability as existed with reference to him and as to Welby Stahl, up to the money limits of the policy, and that neither he nor the said Welby Stahl need take further steps to protect their interest in the matter, leading assured to believe that everything had been done to protect him and also to protect the said Welby Stahl and to bring the said Welby Stahl within the provision of the policy.”
 

 As shown by the testimony, Mabry was apprised of the accident shortly after it had occurred. He immediately got in touch with Tom G. Hodge with whom he had placed the insurance. Mr. Hodge is the local representative of the defendant company. Accompanied by Hodge, Mabry went to the scene of the accident. They investigated the matter and gathered the facts so* far as they were able to do so. At the conclusion of their investigation, Hodge sent a telegram to the home office of the defendant company in Kansas City, Missouri. Mabry testified that he requested Hodge to send this telegram and that it was sent in response to his request. Hodge did not deny that Mabry requested him to send the telegram, but he testified that he notified the company of the accident because it was his
 
 *237
 
 duty to do so. He further testified that the company did not reply to his telegram nor to a letter which he subsequently wrote. The acknowledgement of the Hodge telegram, however, was made by the company direct to Mabry. The card containing the acknowledgement was dated July 1, 1938, which was the day the accident occurred. The investigation and adjustment of the matter was evidently placed in charge of the Beaumont office of the defendant company by its Kansas City office, because under date of July 2, 1938, which was the day after the accident, the following letter was sent from defendant’s Beaumont office to Mabry, namely:
 

 “Beaumont, Texas
 

 “July 2, 1938
 

 “Mr. P. J. Mabry
 

 “2917 West College Street
 

 “Shreveport, La.
 

 “Dear Sir:
 

 “Mr. T. G. Hodge has advised us by telegram that your Pontiac Sedan, driven by your nephew, struck a three year old child on the evening of July 1st.
 

 “You will please let us have Report of Accident or Loss on the enclosed blanks covering this 'case at your very earliest convenience. We will have an adjuster investigate the accident the early part of next week.
 

 “Yours truly,
 

 “T. H. Mastín & Company
 

 “By: (Sgd.) A.' D. Robertson”
 

 “ADR :mk
 

 “Enc.
 

 “cc-Mr. T. G. Hodge
 

 “2737 West College
 

 “Shreveport, La.”
 

 On receipt of this letter and the enclosed blanks covering the case, Mabry filled out the forms and returned them to the company. He did not retain a copy of the completed forms and the company did not place them in evidence. Mabry, however, testified that he answered all the questions and made a full report of the accident, although he did not remember the exact wording of his report. All this took place within thirty days after the accident had occurred. Two or three days after plaintiffs’ child was injured Mr. Achee, an adjuster of the defendant company, appeared in Shreveport to investigate the accident. Stahl furnished him with a written statement. Achee talked with Mabry who gave him the facts as he knew them, including the information that Stahl was the driver of the car. The defendant company also sent a special adjuster from Beaumont to Shreveport. This adjuster also conferred with Mabry and interviewed other persons concerning the accident. Neither Achee nor the other adjuster nor the defendant company itself advised Mabry at any time that the notice given by him to the • defendant company was not sufficient to extend to Stahl the coverage provided by the insurance policy.
 

 Because of the close personal relationship existing between Stahl and Mabry, no conclusion can be reached other than that Mabry in his dealings with the company and its representatives following the accident had in mind the protection of Stahl. It is inconceivable that Mabry, who apparently thought so well of Stahl that he permitted him to use his automobile at
 
 *238
 
 his pleasure, would withhold from Stahl the benefit of.his insurance policy when, by a few written words, he could extend him that benefit. Mabry paid for the privilege of extending the coverage provided by his policy to any person in the situation of Stahl, and the company must have of necessity expected him to avail himself of the privilege when the occasion arose, as it did in this case. In these circumstances, our view is that Mabry substantially complied with the requirement for effecting the coverage embraced within the so-called optional clause of the policy. The defendant company evidently recognized this, because if the company had intended to contest the sufficiency of the notice it would have so advised Mabry instead of handling the case in the same manner as it would have done if it had received a notice couched in such precise language that no dispute could arise as to its meaning. Any other' view of the actions of the company and its representatives would convict the company of the intention of perpetrating a fraud on Mabry by leading him to believe that the provisions of its policy covered Stahl and then' denying such coverage after’the expiration of the delay prescribed for the exercise of the privilege which Mabry had -paid for, namely, to extend coverage to his nephew.
 

 We are unable to subscribe to the view that the notice given by Mabry to the defendant company was merely in response to his obligation under the policy to give immediate notice of any accident in which -his automobile was involved. The notice received by the company was much fuller than would have been required if Mabry had merely desired to inform the company that his automobile was in an accident. There was no reason to notify the insurance company that the driver of the insured automobile was the nephew of Mabry, the insured, unless Mabry intended to extend the protection of the insurance policy to his nephew. The use of particular words to express the intention of the insured that he desired to extend to hiá nephew the coverage provided by the policy was not necessary. A timely expression of his intention to exercise his privilege was sufficient to apprise the defendant company of that intention.
 

 To say the least, the requirement of notice to effectuate the so-called optional coverage clause in the policy is ambiguous. This is so because the policy provision does not state clearly whether the thirty days delay for giving such notice should run from the date of the presentation of the claim by the injured party to the owner, the driver, or the insurer of the automobile.
 

 So far as the record shows, no claim for damages resulting from their minor daughter’s injuries "has ever been made by plaintiffs either against Mabry or Stahl. Plaintiffs sued Mabry’s insurance carrier directly as they had a right to do under the provisions of Act No. 55 of 1930. That statute gives the injured party an immediate right of direct action against the insurer of the party responsible for the injuries. The statute expresses the public policy of this State that an insurance policy against liability is not
 
 *239
 
 issued primarily for the protection of the insured but for the protection of the public. Frequently the insured is financially irresponsible and the only recourse of a person injured by the negligence of the insured is against his insurance carrier. But rarely has the injured party knowledge as to who may be the insurer of the party responsible for his injuries. It is therefore not within his power to give a notice as required by the policy and the enforcement of a policy provision requiring notice to be given by the insured automatically and without any action on his part deprives him of the right of action granted by law. It is not desirable that he should be divested of such action, and that result should not obtain except in a very clear case. This is not such a case. By maintaining plaintiffs’ action, the defendant company is not deprived of any substantial right. Its liability remains contingent .and is dependent upon proof of the negligence of Stahl, the driver of the automobile.
 

 While this case was pending in the Court of Appeal, plaintiffs’ injured child died and plaintiffs filed in the Court of Appeal an alternative motion to remand the case in which they alleged that the death of their child was directly traceable to the automobile accident in which she was injured. In their motion, plaintiffs prayed “that if the Court should find liability in the defendant that this case be remanded to the lower court for the .amendment of the petition in accordance with the facts herein recited, and for the taking of further testimony on the question of the quantum of damages.”
 

 Since the Court of Appeal, in affirming the judgment of the district court, found that no liability attached-to defendant under the' terms of the policy, there was no necessity for the Court. to pass upon the motion to remand. Neither the district court nor the Court of Appeal passed on the fact's of the case.
 

 For the reasons assigned, the judgments of the Court of Appeal and of the district court are annulled, and the case is remanded to the district court for the purpose of permitting plaintiffs to amend their petition in line with the allegations of their motion to remand and for further proceedings consistent with the.views herein expressed; defendant to pay the costs of appeal and of the proceeding in this Court, all other costs to await the final disposition of the case.