136 So.2d 724 (1961)
Theos FUTCH, Individually and as Administrator of the Estate of His Minor Daughter, Janice Futch, Plaintiff-Appellant,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellee.
Jewell TUCKER, Individually and as Administrator of the Estate of His Minor Daughter, Nan Tucker, Plaintiff-Appellant,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellee.
Ann Tucker STUCKEY et al., Plaintiff-Appellant,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellee.
No. 9638.
Court of Appeal of Louisiana, Second Circuit.
December 27, 1961.
Rehearing Denied January 31, 1962.
James T. Spencer and James M. Dozier, Jr., Farmerville, for appellants.
Hudson, Potts & Bernstein, Monroe, for appellee.
*725 Before GLADNEY, AYRES, and BOLIN, JJ.
GLADNEY, Judge.
This action by Theos Futch, individually and as administrator of the estate of his minor daughter, Janice Futch, against the Fidelity & Casualty Company of New York is for the recovery of $10,266.70, and is one of three consolidated cases against the same defendant arising from an automobile accident which occurred January 3, 1960, on Louisiana Highway No. 15 onehalf mile north of the Town of Farmerville. In the trial court the defendant insurer of Jewell Tucker, filed a motion for summary judgment for dismissal of the action on stated grounds of non-liability. After due hearing the motion was sustained and plaintiff has lodged this appeal.
The persons injured in the accident involved in this and the related suits were riding in a Panhard automobile, a compact foreign-made car, the doors of which, when opened, swing toward the rear instead of in the customary manner of most American made automobiles. The automobile was owned by Wilmer Lee Stuckey and its occupants at the time of the accident were the driver of the car, Dawn Tucker, minor daughter of Jewell Tucker; Janice Futch, minor daughter of Theos Futch, who was seated in the center of the front seat; Nan Tucker, minor daughter of Jewell Tucker, seated to the right of Janice Futch; and Wilmer Lee Stuckey, the owner of the car was riding on the back seat with his fiancee, Ann Tucker, also a minor daughter of Jewell Tucker. While traveling at a moderate rate of speed and approaching a bridge Dawn Tucker lost control of the automobile when she attempted to open the left front door in order to slam it shut and fasten it. The door was caught by the force of wind which jerked the door wide open, pulling the driver out and causing the car to crash into the side of the bridge. Injuries were sustained by Dawn Tucker, Janice Futch, Nan Tucker and Ann Tucker.
Wilmer Lee Stuckey was insured under a liability automobile policy by Allstate Insurance Company issued upon the Panhard automobile. Jewell Tucker, the father of Nan, Dawn, and Ann Tucker was insured by a liability insurance policy covering the members of his family, issued to him by the defendant, The Fidelity & Casualty Company of New York.
Prior to the institution of this suit a compromise settlement was negotiated and concluded by Theos Futch in behalf of Janice Futch with Allstate Insurance Company and Jewell Tucker. Under the terms of the agreement Allstate paid the sum of $3,000.00 for Janice Futch's injuries. In a similar settlement Allstate paid the sum of $2,700.00 for Ann Tucker's injuries, and the sum of $300.00 for Nan Tucker's injuries. No settlement was made by Allstate for the benefit of Dawn Tucker, the driver of the automobile, and her father, Jewell Tucker, as administrator of her estate, filed suit against Allstate Insurance Company on account of the injuries received by Dawn Tucker. Allstate's policy provides limits of liability for bodily injury liability of $5,000.00 per person, limited to an aggregate of $10,000.00 per accident. The policy of the Fidelity & Casualty Company of New York as issued to its insured, Jewell Tucker, contains the same limitations.
The defendant's policy contains other provisions pertinent herein, one of which states that with respect to a non-owned automobile the insurance "shall be excess insurance over any other valid and collectible insurance." Another stipulation provides that as to bodily injury liability, the insurer agrees to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * arising out of * * * maintenance or use of any non-owned automobile." (Emphasis supplied.) Still another provision stipulates as to:
"Other Insurance
"With respect to bodily injury to an insured while occupying an automobile *726 not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance."
The instrument of release, or act of compromise as executed by Theos Futch contained this clause:
"Without Prejudice To The Claim Of Dawn Tucker Against Allstate Insurance Co. And Without Prejudice Of The Rights Of Ann Tucker Stuckey, Nan Tucker And Janice Futch Against American Fore Insurance Co. For And In Consideration of the payment to me/us at this time of the sum of Three Thousand & No/100 Dollars ($3,000.00) the receipt of which is hereby acknowledged, I/we, being over 21 years of age, do hereby release, acquit and forever discharge Wilmer Lee Stuckey, W. G. Stuckey & Allstate Insurance Company, Dawn Tucker & Jewell Tucker of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about the 3rd day of January, 1960, at or near a point on the Farmerville-Spearsville Highway north of Farmerville, Louisiana."
No issue is raised as to whether defendant and American Fore Insurance Company are one and the same. It is factual and subject to proof.
The defendant sets forth in its motion for summary judgment three grounds in support thereof:
"Ground I. Under the following terms of the F & C policy no coverage is afforded under said policy upon the extinguishment of the claims and rights of plaintiffs against Dawn Tucker and Jewell Tucker by the releases dated November 14, 1960.
"Coverge ABodily Injury Liability
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. bodily injury, sickness or disease, including death, resulting therefrom, hereinafter called `bodily injury' sustained by any person.
* * * * * *
"arising out of the * * * maintenance or use of * * * any nonowned automobile * * *."
"Ground II. Settlement by plaintiffs with Dawn Tucker and Jewell Tucker extinguished the entire cause of action allegedly accorded plaintiffs even as to F&C under the laws prohibiting the splitting of a cause of action.
"Ground III. As between Allstate Insurance Company and F&C, Allstate is the primary insurer up to $5,000 per person, and F&C is the excess insurer up to $5,000 per person (each with limits of $10,000 per accident) and the liability attaches under the excess coverage of the F&C policy only after the full limits of the Allstate policy have been exhausted; the full limits of the Allstate policy have not been exhausted in this case, and Allstate now having been released by plaintiffs, plaintiffs cannot bring the excess coverage of F&C into play."
Counsel for appellee argues in support of its first contention that Fidelity's coverage under the policy was destroyed by the extinguishment of its insured's obligation to plaintiff and is to be determined "as a matter separate and apart from any efforts *727 by plaintiff to reserve * * * rights against defendant-appellee." The validity of the argument is open to question. What is the obligation of Fidelity under its policy agreement "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay?" Such liability, of course, must be determined with respect to valid restrictions and limits imposed by other policy provisions.
It is conceded, therefore, as indeed it must be, that the insurance "available" to plaintiff by Allstate is $5,000.00 and consequently the coverage of Fidelity is excess insurance, payable only over and above that of Allstate who is primarily liable as the insurer of the automobile. As an excess insurer under its policy provisions defendant may not be compelled to pay any sums Allstate is required to pay under its policy. Therefore, we are of the opinion Fidelity is without any real interest in the settlement effected wherein plaintiff-appellant released its insured and that right acquired by Tucker was important to Tucker, but not to Fidelity. In seeking to avail itself of the release, reliance is placed upon Addison et al. v. Employers Mutual Liability Insurance Company of Wisconsin, La.App., 64 So.2d 484 (1st Cir. 1953), wherein the court held that where a wife, injured through husband's negligence while riding in automobile driven by her husband, died during the pendency of her suit against husband's liability insurer, which was obligated under policy to pay only such sums as insured might become obligated to pay by reason of liability imposed upon him by law, and the husband succeeded to her claim, the husband became both debtor and creditor as to her damages and the obligation was extinguished by confusion. It is clear that the decision is grounded upon the provisions of Article 2217 of the LSA-Civil Code, which provides:
"When the qualities of a debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation."
The succeeding article of the LSA-Civil Code, Article 2218, provided that the confusion that takes place in the person of the principal debtor avails his sureties. The article provides:
"The confusion that takes place in the person of the principal debtor, avails his sureties.
"That which takes place in the person of the surety, does not operate the extinction of the principal obligation.
"That which takes place in the person of the creditor, avails his codebtors in solido only for the portion in which he was debtor."
The Supreme Court recently gave consideration to the case of Dumas v. United States Fidelity & Guaranty Company, 241 La. 1096, 134 So.2d 45, 52 (1961), and therein reaffirmed the ruling in Addison v. Employers Mutual Liability Insurance Company of Wisconsin, supra, noting that the Dumas case was identical in all particulars with that of Addison. A rehearing granted in the case reaffirmed the pronouncement on the original hearing and in the opinion on rehearing by Fournct, C.J., we find the following explanation of the effect of the direct action statute:
"Under Article 2315, the tort victim has a substantive cause of action against the tort feasor, be he stranger or spouse. The cause of action is in valid existence during marriage; the injured spouse is the obligee or creditor of that cause of action while the spouse whose duty it is to repair the damage is the obligor or debtor; but it cannot be asserted as the law affords no appropriate remedy, or right of action, in such circumstances against the tortfeasor-spouse personally. The Direct Action Statute provides the vehicle, granting to the injured person a right of action against the tortfeasor's *728 liability insurer, and thus enabling an injured spouse to enforce against the insurer the fundamental cause of action which otherwise would be of no value because of coverture. But the Direct Action Statute creates no independent substantive cause of action for the injured spouse against the insurer.

* * * * * *
"* * * and when the injured party's substantive cause of action against the original tort feasor is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law."
Comments made upon the original hearing and on the rehearing by the respective authors thereof, recognize that under our jurisprudence the obligation of the insurer is conditional as it is bound only if the insured is legally responsible for the damages sustained, but it may be held liable under the Direct Action Statute even though the injured party has no right of action against the insured tortfeasor. Edwards v. Royal Indemnity Company, 182 La. 171, 161 So. 191 (1935); Ruiz v. Clancy, et al., 182 La. 935, 162 So. 734 (1935); and Rome v. London & Lancashire Indemnity Company of America, La.App., 169 So. 132 (Orl.App.1936).
In addition to Addison v. Employers Mutual Liability Insurance Company of Wisconsin, counsel for defendant cites also Burke v. Massachusetts Bonding & Insurance Company, 209 La. 495, 24 So.2d 875 (1946), which case stands for the same principle enunciated in the Addison and Dumas cases. In the cited case the Louisiana Supreme Court applied the Mississippi law where the tort occurred and under the Mississippi law the wife was without a right of action to sue her husband.
We find the foregoing authorities are readily to be distinguished from the instant case which is more analogous to Benroth v. Continental Casualty Company, D.C., 132 F.Supp. 270, 272 (1955). The decision is one of the Federal District Court with Judge Dawkins as its author. Therein plaintiff's husband was killed near Shreveport when the car in which he was riding collided with a Chevrolet automobile being driven by Jules Fogel. Fogel's car was insured by Continental Casualty Company as prime insurer with the limitation of $25,000.00 for injuries or death sustained by one person in one accident. Fogel also had a public liability policy issued to him by Employers Casualty Company, with liability limits of $100,000.00 for injuries or death to one person in one accident. This latter policy contained an "Other Insurance" clause defining its coverage to be "excess insurance over any other valid and collectible insurance available to the Insured * * *". Continental paid unto plaintiff by way of settlement the sum of $23,500.00 for which the plaintiff granted receipt for payment and release which is quoted in the opinion. In commenting upon the question of whether the payment by Continental exonerated Employers, the court said:
"By the express terms of the Louisiana Direct Action Statute, LSA-R.S. 22:655, plaintiff had the right to sue Fogel's two insurers directly and alone. Lumbermen's Mutual Casualty Company v. Elbert, 348 U.S. 48, 75 S.Ct. 151 [, 99 L.Ed. 59]. Fogel was not even a necessary party, much less an indispensable one. All indispensable parties defendant were named as such in the original complaint. One of them now has made its peace with plaintiff and has been dismissed. Even in its absence, however, the jury still may make its determination of `primary's liability by deciding 1) whether there is any liability, and if so, 2) how much. Based upon the verdict, the Court's `whole' judgment will fully protect Employers against any liability below or above the terms of its policy."
We also consider appropriate a comment contained in Davies et ux. v. Consolidated *729 Underwriters, 199 La. 459, 6 So.2d 351, 357:
"Plaintiffs sued Mabry's insurance carrier directly as they had a right to do under the provisions of Act No. 55 of 1930. That statute gives the injured party an immediate right of direct action against the insurer of the party responsible for the injuries. The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public. Frequently the insured is financially irresponsible and the only recourse of a person injured by the negligence of the insured is against his insurance carrier. But rarely has the injured party knowledge as to who may be the insurer of the party responsible for his injuries. It is therefore not within his power to give a notice as required by the policy and the enforcement of a policy provision requiring notice to be given by the insured automatically and without any action on his part deprives him of the right of action granted by law. It is not desirable that he should be divested of such action, and that result should not obtain except in a very clear case. This is not such a case. By maintaining plaintiffs' action, the defendant company is not deprived of any substantial right. Its liability remains contingent and is dependent upon proof of the negligence of Stahl, the driver of the automobile."
It is our opinion that the act of release should be so construed as to give it the effect intended by the parties. The words therein "without prejudice of the rights * * * against American Fore Insurance Company" must be read in pari materia along with the words "do hereby release, acquit and forever discharge * * of and from any and all actions, causes of action, claims * * *" et cetera. Plainly, we think, it was the intention of the parties to release an obligation which could not and did not accrue under the policy of insurance issued by defendant to his insured, Tucker. As heretofore stated, Fidelity's liability under its excess insurance clause did not accrue until Tucker's obligation was in excess of $5,000.00, the coverage up to which sum was provided by Allstate, the primary insurer. We also notice that in the last paragraph of Article 2218 of the LSA-Civil Code it is the proviso that the confusion that occurs in the person of the principal debtor is available to his surety "only for the portion in which he was debtor". For these reasons we resolve that the first ground urged by appellee in its motion for summary judgment is without merit.
Disposition of appellee's first ground supporting its motion for summary judgment would render moot the remaining grounds urged for affirmance of the judgment except for the reason that appellant's demands upon Fidelity exceed the available insurance from Allstate.
Appellee's second argument is that the settlement extinguished the entire cause of action against it under our statutory law prohibiting the splitting of a cause of action. Under Louisiana law a tort claim may not ordinarily be split. Article 425 of the LSA-Code of Civil Procedure reads as follows:
"An obligee cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof. If he brings an action to enforce only a portion of the obligation, and does not amend his pleading to demand the enforcement of the full obligation, he shall lose his right to enforce the remaining portion."
The same issue was considered in Benroth v. Continental Casualty Company, D. C., 132 F.Supp. 270, (1955) wherein reference was had to LSA-C.C. Art. 2063, which provides:

*730 "A conjunctive obligation is one in which the several objects in it are connected by a copulative, or in any other manner which shows that all of them are severally comprised in the contract. This contract creates as many different obligations as there are different objects; and the debtor, when he wishes to discharge himself, may force the creditor to receive them separately."
Judge Dawkins, the author of the decision, ruled [132 F.Supp. 275]:
"There is no question but that Louisiana law forbids the `splitting' of tort claims in the ordinary situation, and that a plaintiff who sues for less than his whole damage waives his right to recover more than the amount originally sued for, unless he amends his complaint to include it. Plaintiff here, however, has not `split' her cause of action, within the meaning of that term as used in the Louisiana jurisprudence cited. She sued originally, as she was forced to do by the very terms of Employers' policy, upon `conjunctive' obligations allegedly arising from a single tort. From the beginning she has asserted, and now asserts, but a single cause of actiondamages for the allegedly wrongful death of her husbandagainst Fogel's two insurers, primary and excess, the former having been released and dismissed from the suit. She was compelled to use a `split' remedy to enforce her one cause of action. Where `a conjunctive obligation is created, * * * payment may be severally paid or enforced.' By settling with Continental she released that defendant as a primary obligor, but has retained her rights against Employers as the excess carrier. It is the policy of the law to favor settlements, and this plaintiff should not be punished for having done so here."
The above authoritative statement suffices, we think, to reject the contention there was a splitting of plaintiffs' cause of action against the defendant.
Benroth v. Continental Casualty Company also disposes of appellee's last ground advanced in support of the summary judgment. The court therein when confronted with the argument there was no showing of an exhaustion of the primary coverage and such showing was a condition precedent to holding the excess carrier liable, pointed out:
"Paragraph 18 of Employers' policy makes no requirement that there be an `exhaustion' of the primary coverage, i. e., that plaintiff must have received $25,000 in cash from Continental as a condition precedent to recovery from Employers. It is sufficient, we think, that Fogel and Employers received credit from plaintiff to that amount, even though she was paid something less ($23,500) than that sum. Plaintiff expressly has given them that credit in the `Receipt of Payment and Release' executed by her on March 19, 1955, a duplicate original of which now is in this record." The reasoning finds equal force in the instant case and we must deny the contention made in behalf of appellee. The decision rendered on this appeal is equally applicable to Jewell Tucker, Individually and as Administrator of the Estate of his Minor Daughter, Nan Tucker v. The Fidelity & Casualty Company of New York and Ann Tucker Stuckey, et al. v. The Fidelity & Casualty Company of New York.
For the foregoing reasons we have concluded the judgment from which appealed is in error and it is hereby reversed, the motion for summary judgment is overruled and the cause is remanded to the Third Judicial District Court for further proceedings, not inconsistent herewith. Costs of this appeal are assessed against appellee, the taxation of other costs to await a final determination of the suit.