Burdena JONES, Individually and as Administratrix of the Estate of Carl E. Jones, and Guardian of the Persons and Estates of Kay, Carla, Eric Lance, Kevin and Caroline Jones, et al., Appellants,

v.

MID-SOUTH INSURANCE COMPANY, Appellee.

No. 22607.

United States Court of Appeals
Fifth Circuit.

March 31, 1966.

Roger H. Silver, Jr., Monroe, La., E. W. Brockman, Jr., Pine Bluff, Ark., Henry Woods, Little Rock, Ark., S. E. Lee, Jr., Winnsboro, La., Louis D. Smith, Monroe, La., for appellants.

Alex F. Smith, Jr., and Mayer & Smith, Shreveport, La., for appellee.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge:

This appeal presents for our determination whether certain provisions of an automobile liability policy, which serve to exclude from coverage under the policy the injuries sustained by appellants, are repugnant to and in violation of either Louisiana public policy or the Louisiana Motor Vehicle Safety Responsibility Law.[1] The district court upheld the validity of the exclusion and entered summary judgment against appellants.[2] We approve and affirm.

Mid-South Insurance Company initiated this action seeking a declaratory judg-

1. LSA–R.S. 32:851–32:1043 (1963).

2. 236 F.Supp. 739 (W.D.La.1964).

ment that the automobile liability policy it issued to Carl E. Jones does not afford coverage for the injuries sustained by the appellants. Mid-South, an Arkansas corporation, issued the policy dated September 15, 1963, to Jones, a citizen and resident of Arkansas. On October 13, 1963, in Madison Parish, Louisiana, a collision occurred between Jones' automobile and one owned and operated by Charles E. Lewis, a Louisiana resident. The collision seriously injured or killed all those involved. The occupants of the Lewis automobile or their survivors and legal representatives were original defendants; the survivors and legal representatives of the occupants of the Jones vehicle intervened as additional defendants.

The insurance policy issued by Mid-South to Jones restricts its coverage to "the named insured, the spouse of the named insured, additional named insureds and no others". The "named insured" is Carl E. Jones; the only additional named insured is B. R. Jones. The policy states that it does not apply "unless the named insured or additional named insured shall be in actual physical control of the named automobile, which shall mean that the named insured or the additional named insured must be under the steering wheel of the named automobile at the time of the accident, and no others". The policy does not contain the usual "omnibus clause".

At the time of the accident the Jones automobile was being driven by Stanley W. Ross, Jr. Thus under the express terms of Jones' insurance policy, there is no coverage for this accident. In answer to this, appellants argue that the above-quoted exclusion is contrary to the law and the public policy of Louisiana and urge that we disregard the exclusion and hold that the policy does afford coverage for their injuries.

■ The district court assumed, as we do here, that Louisiana law is applicable. Louisiana considers an insurance policy as a contract between the insurer and the insured; as such, the parties are generally free to contract as they please. The Louisiana Supreme Court, in Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75, 125 A.L.R. 1075 (1939), stated this general proposition in very plain language:

"In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them."

■ To show that the exclusion is contrary to Louisiana public policy, appellants rely on the Louisiana direct action statute, LSA–R.S. 22:655 (1959), and the decisional law surrounding and based upon this enactment. Admittedly an examination of the authorities cited by appellants [3] reveals that a liability insurance policy is issued primarily for the protection of the public, rather than for the protection of the insured. From this appellants conclude that the exclusion of the Jones policy is prohibited. But the courts of Louisiana have repeatedly upheld exclusionary provisions in automobile liability policies and declared that it is *not* against the public policy of the State of Louisiana for an insurer to issue an insurance policy restricting coverage by means of exclusionary provisions. See, e. g., Phillips v. New Amsterdam Cas. Co., 193 La. 314, 190 So. 565 (1939); McCoy v. Royal Indem. Co., 174 So.2d 260 (La. Ct.App.1965); Weems v. International Auto. Ins. Exch., 159 So.2d 321 (La.Ct. App.1963); Johnson v. Universal Auto. Ins. Ass'n, 124 So.2d 580 (La.Ct.App. 1960); Kennedy v. Audubon Ins. Co., 82 So.2d 91 (La.Ct.App.1955). On the basis of these authorities the court below concluded that Louisiana public policy does not require that every automobile liability insurance policy contain an omnibus

3. See, e. g., West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); Musmeci v. American Auto. Ins. Co., 146 So.2d 496 (La.Ct.App.1962).

clause, and held that the policy issued by Mid-South does not contravene Louisiana public policy and is valid as written. We are in complete agreement with this determination.

Appellants contend that the Louisiana Motor Vehicle Safety Responsibility Law requires the inclusion of an omnibus clause in the Jones policy. This enactment consists of three basic parts: the first part contains general provisions;[4] the second part deals with the security that must be posted by a driver or owner *following* an accident;[5] and the third part provides for proof of *future* financial responsibility after a driver fails to satisfy a judgment resulting from, or is convicted because of, an accident.[6] Part Three specifies that proof of future financial responsibility may be given by filing with the Louisiana Department of Public Safety a certificate of insurance showing that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility.[7] In this connection Mid-South filed with the Louisiana Department of Public Safety an application to have its financial responsibility notices of insurance recognized as evidence of insurance for purposes of Part Three. The statute provides that the Department of Public Safety may accept a financial responsibility notice from a non-resident insurance carrier as proof of future financial responsibility only if the insurance carrier filing the notice agrees that its policies shall be deemed to conform with the laws of Louisiana relating to motor vehicle liability policies.[8] Appellants point out that Section 900 specifies that a policy serving as proof of financial responsibility shall insure any person using the named insured's automobile with permission,[9] and argue that in filing an application to have its finan-

---

4. LSA–R.S. 32:851–32:858 (1963).

5. LSA–R.S. 32:871–32:878 (1963).

6. LSA–R.S. 32:891–32:909 (1963).

7. LSA–R.S. 32:897 (1963).

8. LSA–R.S. 32:899 provides in pertinent part:
   "A. The non-resident owner of a motor vehicle not registered in this state may give proof of financial responsibility by filing with the [Department of Public Safety] a written certificate or certificates of an insurance carrier authorized to transact business in the state in which the motor vehicle or motor vehicles described in such certificates is registered, or if such non-resident does not own a motor vehicle, then in the state in which the insured resides, provided such certificate otherwise conforms to the provisions of this Chapter, and the [Department of Public Safety] shall accept the same upon condition that said insurance carrier complies with the following provisions with respect to the policies so certified:
   (1) Said insurance carrier shall execute a power of attorney authorizing the [Department of Public Safety] to accept service on its behalf of notice or process in any action arising out of a motor vehicle accident in this state; and
   (2) Said insurance carrier shall agree in writing that such policies shall be

deemed to conform with the laws of this state relating to the terms of motor vehicle liability policies issued herein.
   * * *"
   The "motor vehicle liability policies" referred to are specifically defined in Section 900 (note 9 infra). However, this definition is limited to those policies which have been certified as proof of future financial responsibility under Part Three of the Act. See Grain Dealers Mut. Ins. Co. v. Miller, 142 So.2d 458 (La.Ct.App. 1962); Kennedy v. Audubon Ins. Co., 82 So.2d 91 (La.Ct.App.1955).

9. LSA–R.S. 32:900 states in part:
   "A. A 'Motor Vehicle Liability Policy' as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
   B. Such owner's policy of liability insurance:
   * * * * * * * *
   (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle * * * with the express or implied permission of such named insured * * * *."

cial responsibility notices recognized as evidence of insurance under Part Three, Mid-South agreed to be bound by this provision.

■ Appellants' argument fails for two reasons. First, the application [10] filed by Mid-South does *not* contain an agreement that its policies shall be deemed to conform to the laws of Louisiana relating to motor vehicle liability policies. The application is captioned "Power of Attorney"; it merely appoints the Superintendent of the Louisiana Department of Public Safety as Mid-South's attorney for service of process in any action arising out of an automobile accident in Louisiana. Thus Mid-South did not agree to be, nor is it, bound by the provisions of Section 900.

It is doubtful, moreover, whether the provisions of Part Three upon which appellants rely could have any application to the present case.[11] Part Three is triggered, and thereby becomes applicable, only upon non-payment of a judgment or a conviction resulting from an automobile accident; following such, a driver must supply proof of *future* financial responsibility, as provided for in Part Three, to avoid suspension of his right to drive in Louisiana. Part Three applies only to those policies certified as proof of future financial responsibility. Before the statutory conditions requiring proof of financial responsibility exist, Part Three and its compulsory provisions are not applicable.

■ That a voluntary policy which is not given as proof of future financial responsibility is not affected by the provisions of a financial responsibility statute is the widely-held general rule.[12]

10. Mid-South's Application reads:
    "To: State of Louisiana
    Department of Public Safety
    Financial Responsibility Division
    Baton Rouge, Louisiana
    POWER OF ATTORNEY

    To the Department of Motor Vehicles:
    1. The Mid-South Insurance Company hereby applies to have its financial responsibility notices of insurance recognized as evidence of insurance of non-registrants in the State of Louisiana.
    2. The insurer was incorporated or organized in Arkansas in 1952 as a stock company and is authorized to transact motor vehicle liability insurance under the insurance laws of Arkansas, Georgia, Oklahoma and Nevada.
    3. The full address of the principal office of the insurer is P.O.Box 1079, Station 'A', Corner of 21st and South Dallas Street, Fort Smith, Arkansas.
    4. The insurer hereby appoints Superintendent Department of Public Safety for the State of Louisiana as its attorney in fact to accept service of notice or process on its behalf and for its insured in any action or proceedings arising out of a motor vehicle accident in Louisiana occurring subsequent to the date hereof and agrees that such service shall be legal and binding upon the insurer and this appointment shall remain in force and not be revoked in respect of actions or proceedings arising out of motor vehicle accidents in Louisiana oc-

curring prior to date of revocation. The insurer will give the Supt. Department of Public Safety at least ninety days notice of its intention to revoke the power of attorney and revocation thereof shall not be effective until the expiration of said period of ninety days.

    5. The insurer hereby undertakes to appear in any action or proceedings described in the foregoing power of which it has knowledge." (acknowledgement omitted)

11. See generally Comment, Compensation for Motor Vehicle Accident Victims: The Louisiana Motor Vehicle Safety Responsibility Act, 27 Tul.L.Rev. 341 (1953).

12. See, e. g., Duff v. Alliance Mut. Cas. Co., 296 F.2d 506 (10th Cir. 1961); State Farm Mut. Auto. Ins. Co. v. Cooper, 233 F.2d 500 (4th Cir. 1956); Hawkeye-Security Ins. Co. v. Myers, 210 F.2d 890 (7th Cir. 1954); Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949) cert. denied, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950); M.F.A. Mut. Ins. Co. v. Mullin, 156 F. Supp. 445 (W.D.Ark.1957); State Auto Ins. Ass'n v. Kooiman, 143 F.Supp. 614 (D.S.D.1956); Hoosier Cas. Co. v. Fox, 102 F.Supp. 214 (N.D.Iowa 1952).

    See also 7 Am.Jur.2d Automobile Insurance Sec. 7 (1963); 7 Appleman, Insurance Law and Practice Secs. 4295-97 (1962); Blashfield, Automobile Law and Practice Sec. 3851 (1945); 12 Couch,

More important to our case, the courts of Louisiana have given their approval to this rule. Upon a thorough consideration of the Louisiana statute and the relevant authorities, the court in Johnson v. Universal Auto. Ins. Ass'n, 124 So.2d at 586, stated:

"From the above cited cases, it is apparent that almost without exception the Federal Courts, as well as the appellate courts of other states, have held * * * that financial responsibility laws are not applicable to the first accident because under statutes similar to ours no motorist is required to carry any insurance whatsoever until he has become involved in his first accident and, as a result thereof, has then become subject to the provisions of the financial responsibility law. * * * We agree with the view expressed by the great majority of the appellate courts of our sister states.

* * * The defendant * * * has never been required to furnish a motor vehicle liability policy, as defined in LSA–R.S. 32:900, which must be certified as proof of financial responsibility and clearly pertains only to future accidents. * * * Nowhere in the Act do we find that a person can be required to carry liability insurance of any type in order to operate a vehicle on the highways of this State until after he has first had an accident and thereby been brought within the application of the Act."

Insurance Law 2d Secs. 45.708, 45.736.-742 (1964); Loiseaux, Innocent Victims 1959, 38 Tex.L.Rev. 154, 157 (1959).

13. The policy provides:
    "When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state

Cf. New Zealand Ins. Co. v. Holloway, 123 F.Supp. 642, 647 (W.D.La.1954); McCoy v. Royal Indem. Co., supra, at 262; Weems v. International Auto. Ins. Exch., supra, at 323; Grain Dealers Mut. Ins. Co. v. Miller, 142 So.2d 458, 461 (La. Ct.App.1962); Kennedy v. Audubon Ins. Co., supra, at 94.

We note the Jones policy states that the insurance it affords shall be deemed to comply with the provisions of any motor vehicle financial responsibility law applicable to it.[13] Just such a provision was involved in *Johnson*; the court there held, at 124 So.2d 583–584:

"[A] policy provision [of this type] * * * does not cause a financial responsibility act to become applicable as to the first accident, the sole effect of such a condition being that the financial responsibility law is applicable only where the insurance is required by statute or the policy has been properly certified and accepted as meeting the requirements for 'proof of financial responsibility' for further accidents."

Accord, McCoy v. Royal Idem. Co., supra, at 261–262; Weems v. International Auto. Ins. Exch., supra, at 323.[14]

Louisiana public policy does not prohibit exclusions such as here involved; nor is the Louisiana Motor Vehicle Safety Responsibility Law applicable to the Jones policy. Accordingly, the judgment of the district court is affirmed.

Affirmed.

or province, such insurance as is afforded by this policy * * * shall * * * comply with the motor vehicle responsibility law of any state * * *."

14. See also 7 Am.Jur.2d Automobile Insurance Sec. 7 (1963); 7 Appleman, op. cit. supra note 12, Sec. 4296; 12 Couch, op. cit. supra note 12, Sec. 45.715.