355 So.2d 1279 (1977)
James L. HOLTZCLAW
v.
FALCO, INC., et al.
No. 59536.
Supreme Court of Louisiana.
October 10, 1977.
On Rehearing March 9, 1978.
John T. Campbell, Campbell, Campbell & Johnson, Minden, for plaintiff-applicant.
*1280 Steven H. Beadles, Cook, Clark, Egan, Yancey & King, Roland J. Achee and Frank M. Dodson, Nelson & Achee, Ltd., Shreveport, for defendants-respondents.
Stephen T. Victory, Larry M. Roedel, Liskow & Lewis, amicus curiae, for La. Assoc. of Defense Counsel in support of Hartford Accident & Ind. Co.
DIXON, Justice.
This is an action by the lessee of an Exxon service station which was severely damaged as a result of an intersectional collision allegedly caused through the joint negligence of defendants Garland Oller and Doyle Millican. The accident occurred when the car and boat trailer driven by Oller was struck while crossing an intersection controlled by a flashing red and amber traffic signal by a petroleum transport truck owned by Falco, Inc. and driven by Millican. After striking the car, the truck hit the service station. The traffic signal flashes red in the direction traveled by Oller and amber in the direction traveled by Millican. Prior to the institution of this action, Hartford Accident and Indemnity Company, liability insurer of Oller, entered into compromise agreements with Exxon, Falco and Fireman's Fund Insurance Company (insurer of the station building), exhausting its $5000 policy limits. Plaintiff brought this suit for loss of profit and physical damage to movable property naming both drivers, Falco, Commercial Union Insurance Company (Falco's liability insurer) and Hartford.
After trial by jury, judgment was rendered in favor of plaintiff and against defendants Oller and Hartford in the amount of $4500, and against plaintiff in his action against Millican, Falco and Commercial Union. The Second Circuit Court of Appeal reversed that part of the judgment awarding damages against Hartford but affirmed it in all other respects. Holtzclaw v. Falco, 341 So.2d 1267 (La.App. 2d Cir. 1977). We granted plaintiff's application for certiorari to review this judgment.
Plaintiff's argument that the lower courts erred in denying the liability of Millican, Falco and Commercial Union and in determining the measure of damages to be awarded against Oller is without merit. The findings of the jury are supported by the evidence in the record.
The Court of Appeal, in reversing the trial court's judgment against Hartford, relied upon our decision in Richard v. Southern Farm Bureau Casualty Insurance Co., 254 La. 429, 223 So.2d 858 (1969). This court held, in the Richard case, that ". . . where there are multiple claims arising out of an accident, the liability insurer, in entering compromise settlements pursuant to the right accorded it under the provisions of the policy, may exhaust the entire fund and thus one or more of the injured parties may find that they have little or no recourse against such insurer.. . ." 223 So.2d 858, 861.
The court in the Richard case followed the general rule in the United States, as found in encyclopedias and insurance treatises, and, probably because of the uniform jurisprudence of other states, and because compromises are favored in the law, dismissed plaintiff's argument that, since liability policies were issued "for the benefit of all injured persons," all injured persons were granted a fixed proportional share in the proceeds, which became available after the liability of the tortfeasor was established.
The court in Richard seemed to be swayed to some extent by the supposed lack of a judicial remedy for an insurance company which wanted to settle some of multiple claims from an accident. The "dilemma" presented because our concursus statute requires a fund-holder to admit liability when depositing the fund in a personal injury case is not present in the case before us, which is a contest over property damage coverage, not personal injury coverage. Only in cases of death or physical injury must an insurer admit liability in a concursus proceeding. C.C.P. 4652.
The other possible judicial remedy by which an insurer in a multiple claims case might adequately protect itselfa declaratory *1281 judgments actionwas summarily dismissed by the court in the Richard case because it had held, in Burton v. Lester, 227 La. 347, 79 So.2d 333 (1955), that a declaratory judgments action was unavailable in tort suits. The important change in the declaratory judgments act by the adoption of the Code of Civil Procedure (specifically Art. 1871) by Act 15 of 1960 was ignored. The redactor's comment discusses in full the legislative overruling of Burton v. Lester, supra. Today, unless a reason can be found in C.C.P. 1871-1883, a declaratory judgment action cannot be defeated simply because it arises out of a tort.
Two important considerations stand opposed to the result in the Richard case. The first is the public policy of the State of Louisiana with respect to contracts of liability insurance. Through the years, that policy, first announced by the court, then repeatedly enacted by the legislature, has become firmly fixed in Louisiana law.
The public policy of the State of Louisiana has been expressed in the Direct Action Statute (R.S. 22:655) since it was amended by Act 475 of 1956, a legislative expression of principles previously enunciated and almost uniformly followed by the Louisiana Supreme Court. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351 (1942); West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); see Jones v. Mid-South Insurance Co., 358 F.2d 887 (5 Cir. 1966). Act 253 of 1918 was the predecessor of the Louisiana Direct Action Statute. It was remedial legislation, copied after acts of New York State and Massachusetts. 11 Tul.L.Rev. 443 (1936-1937). Automobile liability policies usually provided that the insolvency of the insured released the insurance company from payment; the act of 1918 provided that it should be illegal for any company to issue any liability policy unless it contained a provision to the effect that the insolvency of the insured should not release the company, and if the insured did become insolvent an action could be maintained against the insurance company.
The 1929 Court of Appeals case of Edwards v. Fidelity and Casualty Co., 11 La. App. 176, 123 So. 162 (Orleans Cir. 1929), held that although the 1918 act allowed an action against the insurer of an insolvent "within the terms and limits of the policy," the action could be maintained by the injured person in spite of the fact that the insured had failed to give notice of the accident to the insurer, as requested by the terms of the policy. The Edwards case also held that an unsatisfied judgment against the insured was prima facie proof of his insolvency.
The legislature responded with Act 55 of 1930, further remedial legislation. The act incorporated part of the holding of the Edwards case, stating that an executory judgment against the insured was prima facie evidence of his insolvency, and created a "right of direct action against the insurer company," to be brought against the insurer alone, or against the insurer and the insured, "jointly and in solido."
The public policy of the State of Louisiana, with respect to the direct action statute, was recognized by the Louisiana Supreme Court in Davies v. Consolidated Underwriters, supra:
". . . That statute gives the injured party an immediate right of direct action against the insurer of the party responsible for the injuries. The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.. . ." 6 So.2d 351, 357.
The Davies case was followed in 1950 by West v. Monroe Bakery, supra, which repeated the public policy statement from the Davies case, and found that the protection of the injured person was the primary purpose of the remedial legislation. The Monroe Bakery had failed to give notice to its liability insurer for more than a year after the accident. The direct action statute provided that the injured person "shall have a right of direct action against the insurer company within the terms, and limits of the policy . . ." Act 55 of 1930. As against the defense of no notice by the insured, the Louisiana Supreme Court *1282 found that it was not within the injured person's power to give notice as required by the policy, and that the injured third party could not be divested of his right of action by the failure of the insured to comply with the statutory requirement of notice.
The other important consideration opposed to the result in the Richard case is that the injured person's right of direct action against the insurer is the property of the injured person, arising at the time of the act and the damage for which he seeks recovery. This property is called a litigious right (C.C. 2653, 3556(18)) and is recognized as property here and in France. XIII Tul. L.Rev. (1938-1939); Planiol, Vol. 2, § 1649 ff. (1939). Any provision in the liability policy which purports to minimize the right of an injured person to sue the insurer directly cannot be enforced without depriving the injured person of a property right. The insurer cannot rely on a policy provision which purports to give it the right to "make such . . . settlement of any claim or suit as it deems expedient" except against the other contracting party, the insured, with any more confidence than it could rely upon the "no action" clause. The direct action statute has excised the "no action" clause, and has given to the injured person a direct right of action.
The insurer does have the right to compromise and settle claims, and the law does favor compromise. But by its very nature, a compromise involves risk, and is defined as an agreement in which "every one of them prefers to the hope of gaining, balanced by the danger of losing." C.C. 3071.
The risk which Hartford took, when it compromised its claims with part of the claimants, was that another claimant would enforce its claim against Hartford. No statute and no contractual provision with Holtzclaw gives Hartford the right to render the property of Holtzclaw worthless.
Richard v. Southern Farm Bureau Casualty Insurance Co., supra, is therefore overruled.
This case was submitted to the jury upon instructions that the insurer had the right to exhaust the policy limits in settling with some claimants, to the exclusion of others, "provided that these settlements were reasonable and made in good faith." The undisputed evidence was that Foggin, Hartford's employee who investigated, adjusted and recommended the course which Hartford followed, did not arrive at the scene of the accident until Monday after the Saturday accident, although he had been promptly notified by his insured, and that most of the movable property of the filling station had been removed. He learned that Holtzclaw was the operator of the station, and sent a letter to him about five months after the accident to the effect that, if all parties did not agree to settle within thirty days, they would place the "policy limit of $5000 with the court and let each party file claim and the court distribute the funds." This was never done, and neither Holtzclaw nor his lawyer heard any more from Hartford.
In order to find for Holtzclaw, the jury must have, on the instructions given, found Hartford was not in "good faith." It is possible that the evidence would support such a findingnot that there was anything akin to fraud, but that Hartford might have been negligent to such a degree that the settlement could not be called "good faith" settlement when Holtzclaw was ignored. Because the case was given to the jury on a premise which we consider erroneous, we do not decide whether Hartford was in "good faith."
The other factual findings of the jury however are amply supported by the evidence, and we make no change in the judgment based upon the verdict.
For these reasons, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated, at the cost of the respondent, Hartford Accident and Indemnity Company.
SANDERS, C. J., and MARCUS, J., dissent and assign written reasons.
SUMMERS, J., dissents.
*1283 SANDERS, Chief Justice, dissenting.
In my opinion, the decision in Richard v. Southern Farm Bureau Casualty Ins. Co., 254 La. 429, 223 So.2d 858 (1969), is sound and controls the disposition of the instant case. I find nothing in the direct action statute contrary to that decision.
I greatly fear that the action of the majority will discourage the settlement of claims in cases involving multiple claimants.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice, dissenting.
I do not consider that the direct action statute (La.R.S. 22:655) prohibits good faith settlements with less than all claimants under a liability insurance policy, thereby exhausting the limits of the policy, where the policy expressly accords the insurer the right to settle claims. Accordingly, I disagree with the majority's overruling of Richard v. Southern Farm Bureau Casualty Ins. Co., 254 La. 429, 223 So.2d 858 (1969).
Rather, I consider that the direct action statute grants a right of action to an injured party against the insurer; it does not grant an injured party a prorata share of the proceeds of the policy. The only policy provision negated by the direct action statute is a "no action" clause. Otherwise, the direct action statute expressly restricts the right of action against the insurer to "the terms and limits of the policy." A settlement provision is a valid contractual agreement. If the insurer exercises its right to settle, it has not contravened the direct action statute, assuming the settlement was made in good faith, i. e., reasonable payment of a valid claim. Accordingly, I respectfully dissent.

ON REHEARING
DENNIS, Justice.
A rehearing was granted in this case to determine whether this Court was correct in (1) overruling Richard v. Southern Farm Bureau Casualty Insurance Co., 254 La. 429, 223 So.2d 858 (1969), and (2) in holding that the direct action statute grants to each person injured in an accident a right of action against the tort-feasor's insurer which cannot be affected by the insurer's settlements with other claimants.
The factual pattern of this case is well stated in our original opinion and in the court of appeal opinion. Holtzclaw v. Falco, Inc., et al., 341 So.2d 1267 (La.App. 2d Cir. 1977).
The insurance policy provided a limit of $5,000 on coverage for property damage. Multiple claimants, including Holtzclaw, sustained property damages through the negligent operation of an automobile by the insured. Hartford, the insurer, settled with all claimants except Holtzclaw, exhausting the $5,000 policy limits. Trial of Holtzclaw's claim resulted in a judgment for $4,500 against the insured and Hartford. The court of appeal reversed that part of the judgment awarding damages against the insurer but affirmed in all other respects. Holtzclaw v. Falco, Inc., et al., supra. On original hearing we reversed and reinstated the judgment of the trial court.
The instant case presents the question of what remedy, if any, a claimant has against alleged disproportionate disposition of the policy proceeds through settlements by the company with other claimants. A sound approach to the solution of this problem requires that it be considered in relation to another: has the company any duty to the insured regarding settlement of multiple claims arising from a single accident? If both questions are to be answered affirmatively, then the definition of the insured's rights against the company and the claimants' rights against the company must be consistent; they must be such that it is possible for a company to select a course of action which will fulfill both obligations.[1]
It is generally accepted that an insurer must carefully consider the interests of its insured, instead of only consulting its own self-interests, when handling and settling claims in order to protect the insured *1284 from exposure to excess liability.[2] While the nature of the insurer's obligations toward the insured is not clearly defined, this Court has recognized that a liability insurer owes its insured a minimum duty to act in good faith and to deal fairly.[3] Some Louisiana court of appeal decisions indicate the imposition of a greater duty based upon a combined requirement to act in good faith and to use reasonable care and skill in settlement of claims.[4] Language in one appellate opinion and a scholarly writing suggest the insurer should be regarded as a fiduciary or a mandatary responsible not only for unfaithfulness in management of claims but also for his fault or neglect.[5] This jurisprudence is consistent with a trend in other jurisdictions which has elevated the insurer's duty to act in good faith to an obligation of due care,[6] and, perhaps, even strict liability.[7] For our purposes in deciding the instant case a full delineation of the duty of a liability insurance company to its insured is not necessary. It is important, however, that consideration be given to whether this duty should be restricted so as to accommodate an enlargement of the insurer's duty towards claimants.
In our original opinion we did not discuss the duty of the insurer towards its insured in handling claims under the policy. Impliedly, however, our initial holding would limit or modify the insurer's duty in this regard. A duty to avoid preference among claims, enforceable in an action by a claimant for damages, cannot be reconciled with a duty of the insurance company to the insured comparable to that which has been recognized in our jurisprudence.[8] Consequently, *1285 in reassessing our decision, we must take into consideration whether the statutes underlying our holding display a legislative intent that is inconsistent with the degree of responsibility toward policy holders that our courts have exacted from insurance companies.
The direct action statute, La.R.S. 22:655,[9] undoubtedly does commit Louisiana to a strong legislative policy of assuring financial protection for innocent victims of automobile accidents. This Court has even stated that it "* * * expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." Davies v. Consolidated Underwriters, 199 La. 459, 475-6, 6 So.2d 351, 357 (1942). The statute does not, however, provide that the insurer's duty in handling and settling claims is owed primarily to the public instead of the insured. Although the legislation expresses an intention that "all liability policies within their terms and conditions are executed for the benefit of all injured persons," it also provides "that it is the purpose of all liability policies to give protection and coverage to all insureds * * *." La.R.S. 22:655 (emphasis added).
Nor does the statute express or fairly imply an intention to grant to each person injured in an accident a right superior to a reasonable term or condition of the policy by which the insurer is empowered to settle claims. Basically the statute abrogates the insolvency of the insured as a defense for the insurer and grants to an injured person a direct right of action against the insurer within the terms and limits of the policy. Its provisions are designed to remove two principal obstacles to recovery, the "no action" clause and the prerequisite of obtaining a judgment against the insured. Comment, The Louisiana Direct Action Statute, 22 La.L.Rev. 243 (1961); Comment, Direct Rights of Action Against Public Liability Insurers: Louisiana Act 55 of 1930, 11 Tul. L.Rev. 443 (1937); see also, Webb v. Zurich Insurance Co., 251 La. 558, 205 So.2d 398 (1967). The legislation is remedial and does not purport to create rights against the insurer independent of those provided for in the policy or contract of insurance.
This Court did not reach a different conclusion in West v. Monroe Bakery, 217 *1286 La. 189, 46 So.2d 122 (1950). The direct action statute, then, as now, provided that any action brought thereunder shall be "within the terms and limits of the policy." In rejecting the insurer's defense based on the insured's failure to give notice of an accident "as soon as practicable," as required by the policy, this Court indicated that the statutory proviso was not intended to include the requirement of notice, but referred only to "the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply."[10] The opinion of the court quoted with approval from Davies v. Consolidated Underwriters, supra, which observed that, due to a claimant's lack of knowledge of the insurer's identity, it is "not within his power to give notice as required by the policy;" therefore, the policy provision requiring notice to be given by the insured cannot be enforced to deprive him of the right of action granted by law. 217 La. at 210, 46 So.2d at 130. Accordingly, this Court has liberally construed the direct action statute in favor of maintaining the direct right of action by injured persons, but it has not interpreted the legislation so as to grant plaintiffs a right of action uncircumscribed by the limits of the policy or those other warranties and conditions with which it is within their power to comply.
Upon reflection we also conclude that the right of direct action against an insurer is not, as may have been implied in our original opinion, imbued with greater stature by virtue of its being a litigious right as described by Louisiana Civil Code Articles 2653[11] and 3556(18).[12] These articles are related to the chapter entitled "Of the Assignment or Transfer of Credits and Other Incorporeal Rights." La.C.C. arts. 2642-54. They merely tell under what circumstances a right becomes litigious in determining those entitled to claim the benefit of Article 2652, which provides that a person against whom a litigious right has been transferred may obtain a release by paying to the transferee the real price of the transfer, together with interest from its date. These articles do not purport to define the intrinsic nature of a right but provide only that a suit and contestation must exist in order for any right to become litigious.[13]
The insurance contract in the instant case contained a clause giving the insurer the right to enter compromise settlements and, in doing so, to deplete and exhaust the insurance fund.[14] The direct action statute provides that the action which may be maintained by the injured party shall be "within the terms and limits of the policy." There is no expression within the legislation or intention implicit in the underlying reasons for its enactment which require us to regard the insurer's right to settle as anything other than a term or limit of the policy. We conclude, therefore, that the direct action statute does not give a plaintiff a right of action which is superior to the settlement clause of the insurance policy. Furthermore, we see no necessity for reformulation of the rule of law demanding only that the insurer act reasonably and in good faith toward claimants in effecting settlements. The implementation of the legislative policy of assuring innocent accident victims of financial protection does not appear to have been thwarted by the prevailing jurisprudential rules. There are very few reported cases in which a claimant *1287 contests a disproportionate settlement.[15] The requirement of a more stringent standard of care by the insurer towards claimants would necessarily tend to diminish the degree of the company's responsibility owed its insureds. Accordingly, we have determined that we erred in our first opinion in overruling Richard v. Southern Farm Bureau Casualty Insurance Co., supra, and that our holding in that case should be fully reinstated.
We also reaffirm our decision in that case to reject the argument that the direct action statute grants to each person injured in an accident ownership of or a privilege upon a pro-rata share in the insurance proceeds which become available after liability of the insured tort-feasor is established.[16] For the same reasons we concluded that the statute does not subordinate the insurer's right to settle clause to a claimant's right of action we think it clear the legislation does not express or fairly imply such an intention. The remedial purpose of the statute was to remove obstacles to the claimant's recovery, not to create for him a privilege or an ownership interest in insurance proceeds. A privilege can be claimed only for those debts to which it is expressly granted by law.[17] La.C.C. art. 3185.
The evidence relevant to the question of whether there was a sufficient basis to support the jury's finding that Hartford did not act reasonably or in good faith toward Holtzclaw in its claims settlements has been summarized in our original opinion and the court of appeal opinion. The salient features are as follows: The accident occurred on March 16, 1974. By letter dated July 3, 1974, Hartford informed Holtzclaw and other potential claimants of the following:
"Gentlemen:
"We wrote each of you on April 19, 1974. Only Exxon has advised us of their claim amount and supporting papers.
"If we do not have all parties agreed on in 30 days, we will place our policy limit of $5,000 with the court and let each party file claim and the court distribute the funds."
Holtzclaw turned this letter over to his attorney. Neither Holtzclaw nor his attorney made any effort to contact Hartford and submit a claim for consideration. The other claimants did contact Hartford concerning their respective claims and negotiated a settlement in December, 1974. There was no other communication between Hartford and Holtzclaw or his attorney before this suit was filed on March 14, 1975. Under these circumstances there was not sufficient evidence to support a finding that Hartford acted unreasonably or without good faith with respect to Holtzclaw.
Accordingly, the judgment of the court of appeal is affirmed.
TATE, J., dissents and assigns written reasons.
DIXON, J., dissents, adhering to the original opinion.
TATE, Justice, dissenting.
In general, I agree with the scholarly analysis of the majority opinion of the opposing interests at issue. I also agree that, in our original majority opinion, we did not give appropriate weight to the duty of the insurer to protect its insured by compromising as many of the multiple claims as possible. The insurer should not be penalized for settling some but not all multiple claims, in order to reduce as much as possible its insured's exposure to tort judgment.
*1288 On the other hand, I also agree with our original decision that Louisiana's direct action statute, La.R.S. 22:655, incorporates a legislative policy that, at the moment of an accident, the injured person, as well as the insured, is protected by a liability insurance policy. I do not believe that the insurer can deprive the injured person of the (at least pro rata) protection afforded him (as well as the insured) by the policy, by paying the entire proceeds to other claimants.
On the other hand, it seems to me, such payments in compromise of other claims should reduce the amount of the policy limits available for uncompromised claims (i.e., by the proportion of the claims paid to the total claims payable). Nevertheless, in my opinion, they should not completely extinguish the insurer's liability to a claimant not so preferred by settlement; the uncompromised claimant is still owed his pro rata share of the policy proceeds, just as if a concursus proceeding had been instituted. In the present case, for instance, the claimant would be entitled to his pro rata share of the $5,000 policy limits, as represented by his claim's proportion of the total tort liability of the insured for the accident in question.[1]
Whether a claim exceeds the policy limits or not, the insurer is obliged by its policy terms to defend its insured in a suit brought by the uncompromising plaintiff; thus, it is not exposed to an additional law suit by virtue of the approach suggested. The formula for its policy-limit liability may seem complicated, as verbally articulated; but it would be no more difficult for the courts to administer than our other pro rata adjustments of multiple recoveries exceeding policy limits (e.g., as if all these claims had been joined in one concursus proceeding).
The merit of this approach, it seems to me, is that it would recognize and reward the insurer for good faith settlements with other claimants on behalf of its insured. At the same time, one claimant would not be deprived of his legislatively-given direct action against the insurer for his injuries and for his pro rata share of the policy proceeds.
I would to this limited extent overrule Richard v. Southern Farm Bureau. Therefore, I respectfully dissent.
NOTES
[1] See, Keeton, Preferential Settlement of Liability-Insurance Claims, 70 Harv.L.Rev. 27 (1956).
[2] See, Comment, Duty of Insurer to Settle, 30 La.L.Rev. 622 (1970).
[3] Roberie v. Southern Farm Bureau Casualty Ins. Co., 250 La. 105, 194 So.2d 713 (1967). In this case the Court considered but did not decide whether the duty owed was actually one of due care.
[4] Cousins v. State Farm Mutual Automobile Ins. Co., 294 So.2d 272 (La.App. 1st Cir. 1974); Trahan v. Central Mutual Ins. Co., 219 So.2d 187 (La.App. 3d Cir. 1969); Younger v. Lumbermens Mutual Casualty Co., 174 So.2d 672 (La.App. 3d Cir. 1965); Wooten v. Central Mutual Ins. Co., 166 So.2d 747 (La.App. 3d Cir. 1964).
[5] Younger v. Lumbermens Mutual Casualty Co., supra, at 675 (quoting from 7A, Appleman, Insurance Law and Practice, § 4711 (1962 ed.); Comment, Duty of Insurer to Settle, 30 La.L. Rev. 622, 640 (1970) (quoting from La.C.C. art. 3003; see also, Note, 39 Tul.L.Rev. 368 (1965).
[6] See, Comment, The Tort of Bad Faith: A Perspective Look at the Insurer's Expanding Liability, 8 Cumberland L.Rev. 241 (1977); Koesterer, Liability in Excess of Policy Limits, 27 Fed. of Ins. Council 287 (1976); Note, 25 Drake L.Rev. 900 (1976); Note, 13 Wake Forest L.Rev. 685 (1977); see also, Annotation, Duty of Liability Insurer to Settle or Compromise, 40 A.L.R.2d 168 and Later Case Service.
[7] Crisci v. Security Insurance Co., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967) (dictum); Rova Farms Resort, Inc. v. Investors Insurance Co. of America, 65 N.J. 474, 323 A.2d 495 (1974) (dictum).
[8] Professor Keeton illustrates: "* * * Consider the following situation:

"A, B, and C suffer personal injuries through the allegedly negligent operation of an automobile by D, who carries a liability-insurance policy with bodily-injury liability limits of $5,000 each person and $10,000 each accident. A offers to settle for $5,000, B for $4,000, and C for $5,000.
"What should the company do? Assume that it concludes that each of the three settlement figures is very favorable to the defense if viewed independently of the others, and that settlement of two of the three would not increase the risk regarding the third. From the point of view of one concerned with defense against the total claims of A, B, and C (the point of view required in discharge of the duty to the insured), two of the three claims should be settled. But from the point of view of proportionate distribution of policy proceeds among claimants, none of the offers should be accepted. Numerous other assumptions which might be made would produce similar conflicts. In fact, the conflicts would become more complex if the reasonableness of each settlement figure were questioned.
"* * *
"Recognition of a duty to the claimants to avoid disproportionate disposition of policy proceeds is not feasible without modification of the duty to the insured, a duty which, under existing policy forms and precedents, probably extends to multiple-claim as well as singleclaim cases." Keeton, Preferential Settlement of Liability-Insurance Claims, 70 Harv.L.Rev. 49, 50 (1956). See also, Comment, Distribution of a Limited Insurance Fund to Multiple Claimants, 22 La.L.Rev. 214 (1961).
[9] La.R.S. 22:655 provides:

"No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in Revised Civil Code Article 2315, or heirs against the insurer. The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.
"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."
[10] 217 La. at 205, 46 So.2d at 128, quoting from West v. Monroe Bakery, 39 So.2d 620 (La.App. 2d Cir. 1948) (dissenting opinion).
[11] Art. 2653. A right is said to be litigious, whenever there exists a suit and contestation on the same.
[12] Art. 3556(18). Litigious rightsLitigious rights are those which can not be exercised without undergoing a lawsuit.
[13] See, Comment, Sale of Litigious Rights, 13 Tul.L.Rev. 448 (1939).
[14] "* * * [T]he company may make such investigation and settlement of any claim or suit as it deems expedient."
[15] We note that the issue has been raised in only two Louisiana appellate court cases since Richard. See, Louisiana Farm Bureau Mutual Insurance Co. v. State Farm Mutual Automobile Ins. Co., 348 So.2d 1311 (La.App. 3d Cir. 1977); Jack v. Jack, 240 So.2d 435 (La.App. 3d Cir. 1970); cf. Wright v. Romano, 279 So.2d 735 (La.App. 1st Cir. 1973). Moreover, the issue has seldom been raised in other jurisdictions.
[16] Although the author of the initial opinion herein does not share this view, one or more of the original majority believes that the direct action statute protects a pro-rata share of the insurance fund for each claimant.
[17] Compare, La.R.S. 9:4581 which expressly provides for a vendor's privilege on fire insurance proceeds.
[1] The total tort liability would be determined by adding the $4,500 owed him to the reasonable value of the $18,000 claims by the other persons injured, or $4,500/$18,000 (assuming the $18,000 to be the reasonable value of their claim, instead of the $5,000 for which they were settled).